# Potts *versus* Everhart.

Whether a party had held adverse possession for twenty-one years, up to a certain boundary; and if he had not, where the true line between the parties was; are questions of fact for the jury.

When a man enters into possession of a tract of land with title or colour of title, and makes corners or adopts those already on the ground, and claims to hold up to them and asserts them to be his boundaries, his declarations, always evidence against himself, are, when offered for himself or others claiming under him, something more than hearsay evidence.

Such declarations accompanying his acts, constitute part of the *res gesta*, and as such are always received in evidence in questions of possession.

A transaction made up of coincident assertions and actions, must in its proof include both its parts. If the *res gesta* be competent, the accompanying declarations must be received as one of its actual elements.

The maintenance of a fence for fifty years near the boundary line, between two contiguous tracts of land, was a strong expression that the party intended to limit his claim to that boundary: but it was not conclusive, and might be explained or contradicted by other circumstances equally strong or significant.

An owner is not bound to set his fence on, instead of within his line.

ERROR to the Common Pleas of *Berks county*.

This was an action of ejectment brought by David Potts to recover possession of a tract of land, containing five acres, more or less, situate in Robeson township, Berks county. The plaintiff

and defendant are owners of adjoining tracts of land. The disputed tract has until recently been woodland. The line between them is described in .the patent to the plaintiff and in the deed of the adjoining land, under which the defendant claims, as running from a chestnut tree corner, in a south-westerly direction, *a straight line,* one hundred and fifty-four perches. The whole land on the north side of the plaintiff's property belonged, in 1805, to Peter Myers. The western part he subsequently sold to David Wynn, the middle became vested in Robert Gilmore, and the eastern part in Thomas Wynn and others. The lines separating these properties run nearly north and south, and perpendicular to the line dividing the plaintiff's property from the Peter Myers land. In 1841 the defendant became the owner of the David Wynn tract. For more than fifty years a fence had stood on or near the line between David Wynn, (now defendant's) land, and the land of the plaintiff. In 1846, the defendant, in the absence of the plaintiff, removed this fence southward about six rods in some places, and twenty-five feet in others, claiming the newly enclosed land. To recover possession of this tract thus taken from the plaintiff, the suit was brought. Upon the trial the plaintiff having given in evidence his title under the Commonwealth to a tract of land, having the *chestnut tree* for a corner, and bounded on the north by a line running westwardly to the end of a line running southwardly to a stone heap called "frog pond corner," and having further shown the removal of the fence by the defendant southward, proceeded to prove that David Wynn, the defendant's grantor, acknowledged the old fence as the line between him and Potts. The defendant then, after having shown the existence of a stone heap in the line between Wynn and Gilmer, offered to show that Wynn and Wynn's grantor, on several occasions, asserted his line to be further south than the old fence, and running as far south as the stone heap, on the line between Wynn and Gilmer.

To these declarations the plaintiff objected, but the court below overruled the objections, and admitted them under exceptions by plaintiff.

That part of the charge of the court below (JONES, P. J.), material to the questions raised in this court, was as follows :—

"It is undoubtedly true that a man may put up a fence upon his own land, and as far within his line as he pleases,—and that will not amount to an abandonment of such of his land as is situated beyond. Of such land, so beyond his fence, he may resume possession at any time, unless he comes to be shut out by adverse possession for twenty-one years. This is upon the supposition of the owner acting from his own mere will, without any arrangement or agreement with an adjoining owner. An occasional trespass of the adjoining owner in cutting timber 'on the

[Potts *v.* Everhart.]

land of his neighbour, outside of the neighbour's fence, would not amount to such an adverse possession as would give the kind of title acquired in that way. But if we were to proceed regularly to farm the land, or to join his fences up to the one set back— and this were persisted in for twenty-one years, he would acquire title to the land so farmed or enclosed.

"David Wynn, under whom the defendant claims, himself seems to have considered this worm fence a line fence; two of his children so testify for the plaintiff. On the other hand there is testimony that David Wynn claimed below that fence—south of it. Witnesses for the plaintiff say that the worm fence came out on the east to the stone heap corner, and that the corner of the new fence is south of where that old stone heap corner stood, at which the worm fence ended. This again is contradicted; and it is said that the old worm fence ended some six or ten feet north of that stone heap corner at the east, and not at it. Then there is the evidence as to the exercise of ownership, which may be very material in connexion with the declarations of parties who were owners at the time the declarations were made. If one admits a right in another, and the other acts in conformity to the admission, it is very strong evidence that the right is understood between them, as it is admitted. With regard to the acts in this case, as whether Potts ever did cut the timber up to the old worm fence, it is for the jury to ascertain how they are.

"The whole controversy is as to the true line between these parties—whether it is the old worm fence or the new fence.

"If that old fence was the line, made so by the acts of the parties, it would matter not what was called for by the deeds, nor what might be the discrepancy in the testimony of the surveyors, nor what the variations of the compass; none of these could remove the fence or shift the line. Even if the new fence were placed with the utmost mathematical precision on the originally true line, still if Wynn and Potts treated the old worm fence as the true line, and acted upon it mutually, it would become for this controversy the true line, putting aside all others. How the facts are, it is for the jury to say.

"If the old worm fence then is the line, Potts will recover all the lands between the new fence and that old fence; if not, the verdict would be for the defendant, Everhart.

The jury found for the defendant."

The errors assigned were to the admission of the declarations of Wynn, and that the court erred in charging the jury: "The whole controversy is as to the true line between these parties— whether it is the old worm fence or the new fence." If the old worm fence is the line, Potts will recover all the lands be-

[Potts *v.* Everhart.]

tween the new fence and the old fence; if not, the verdict should be for the defendant.

*Strong*, for plaintiff in error.—The title of Everhart and Wynn was the same. Any declarations of Wynn in support of that title or possession were evidence made by the defendant for himself: Bassler *v.* Niesly, 2 *Ser. & R.* 354; Moore *v.* Pearson, 6 *W. & Ser.* 55; Riddle *v.* Dixon, 2 *Barr* 372. A declaration to be admissible, must be prejudicial to the party who makes it: McPeak *v.* Hutchinson, 5 *Ser. & R.* 295. Notwithstanding evidence has been given on the part of the defendants of declarations of one under whom plaintiff claims, it is not competent for the plaintiff to give in evidence other declarations of the same person on other occasions: Romig *v.* Romig, 2 *R.* 248; 1 *Pet. Rep.* 15; Smith *v.* Powers, 15 *N. H. Rep.* 546; Lyman *v.* Hull, 20 *Verm.* 349; Warring *v.* Warren, 1 *John.* 340; Smith *v.* Martin, 17 *Conn.* 399.

*Banks*, for defendant in error.

The opinion of the court was delivered by

WOODWARD, J.—Whether the plaintiff had held adverse possession for 21 years up to the old fence—and if he had not, where the true line between him and the defendant was, were questions of fact which were submitted, as was proper, to the jury; and from the verdict rendered we are to take these two conclusions of fact as established—1st, that the plaintiff had not such possession as would give him title to the land in question under the statute of limitations; and, 2d, that the true boundary between the parties is that on which the defendant has set his new fence. These conclusions put the plaintiff out of court.

But he complains that the declarations of David Wynn, the grantor of the defendant, were admitted in evidence to contribute to those conclusions, and this he considers an error for which the judgment should be reversed. To weigh properly the legal character of these declarations it is necessary to consider, a little in detail, the relation of the two tracts of land, and of their respective claimants.

The "Bullberry" tract claimed by the plaintiff adjoins the William Howe tract on the south, and the line between them is straight. But their corners on the sides that are contiguous do not coincide. The south-west corner of the Howe tract, a hickory tree, is some ten rods beyond the corner of the Bullberry, and the latter extends far beyond the chestnut, which is the north-east corner of the Howe. From the point, however, in the south boundary of the Howe tract at which the Bullberry makes its corner, to the chestnut, the straight line is common to both tracts— the southern boundary of the one, the northern of the other.

[Potts v. Everhart.]

Wynn became the owner of the "Howe" tract in 1805, and resided on it at the time the declarations complained of were made. He or his predecessors in the title had built a fence, known in the evidence as the old fence, which began at the hickory corner, and ran for some distance the course of the line, but then separated from it, and ran, by no very steady course, a few rods north of the line from the hickory to the chestnut. He sold and conveyed, many years ago, part of his tract to Robert Gilmer, and the dividing line as established between them was perpendicular to and terminated in the above-named line at a stone's corner, which, according to the evidence, was a little south of the old fence. The declarations of Wynn, which are the subject of the bills of exception, relate to these two corners, the hickory and the stones, neither of which is a corner of the Bullberry survey, but which are the two corners of that part of the Howe tract now claimed by the defendant, and between which he built the new fence that provoked this ejectment. The plaintiff claims that the true boundary between the two tracts was north of where the old fence stood, but conceding that Wynn by his long possession had acquired title down to the line of the old fence, he denies the right of the defendant claiming under Wynn to remove the fence further down on land which he regards as his own, and thus it is apparent that the disputed territory is that lying between the new fence and the line of the old fence. It was uncleared land, and if the plaintiff sometimes trespassed upon it to take timber, the verdict proves that he had no such possession of it as would be title under the statute of limitations. The original warrants were not in evidence, and from such of the title papers as were exhibited it is impossible to ascertain which tract was first surveyed. Under these circumstances were the declarations of Wynn, who is now deceased, evidence fit and competent to go to the jury?

When a man enters into possession of a tract of land with title or colour of title, and marks corners, or adopts those already on the ground, and asserts them to be his boundaries, and claims to hold up to them, his declarations, always evidence against himself, are, when offered for himself or others claiming under him, something more than mere hearsay evidence. They constitute a part of his acts—of the *res gestæ*—and as such are always received in evidence in questions of possession. They are evidence for him on the same principle that the facts of taking possession, of maintaining it, of marking lines and corners, and of making improvements, are evidence in his favour. These are acts of dominion. Demonstrations of an intention to appropriate the land indicated, assertions of right and title, and declarations accompanying and explanatory, are parts of the acts themselves. The word and the deed suited and united to each other, must be taken together, like the cry of the mob and their acts in Lord George

[Potts *v.* Everhart.]

Gordon's case.  A transaction that is made up of coincident assertions and actions must, in its proof, include both its parts.  It is but half proved if either is omitted.  If the *res gestæ* be competent, it is as unphilosophical as it is against the authorities of the law to object to one of its actual elements.  That it has been the course of this court to receive declarations such as are complained of in the record, is apparent from the cases cited in the argument, to which may be added Mills *v.* Buchanan, 2 *Harris* 59, Cone *v.* Philadelphia, 4 *Harris* 87, and all those numerous cases of ejectment in which a party in possession under colour of title has been permitted to show that he claimed to certain boundaries, whether natural or artificial.  Miles *v.* Miles, 8 *W. & Ser.* 136; Porter *v.* McGinnis, 1 *Barr* 413, and Clarke *v.* Dougan, 2 *Jones* 90, are types of this class of cases.

But it is argued that the maintenance of the old fence for fifty years was a strong expression of limitation of claim to that boundary.  So it was, and the plaintiff had the benefit of it with the jury.  But it was only an expression which might be explained or contradicted by others equally or more significant.  There was nothing conclusive in such a fact, for a man is under no legal or moral obligation to set his fences on and not within the lines of his land.  And a first fence built in the woods, however it may be designed to occupy a boundary line, is seldom found to be exactly upon it.  Wynn did not, therefore, necessarily lose title to the land south of the fence, by maintaining it even for half a century short of the line on which he might have erected it.  His title papers called for a straight line, and he claimed the hickory and the stones as his corners.  A straight line between these corners was then the boundary of his claim when he sold to Everhart.  And if his title was older than the Bull warrant, the law would adjudge him in possession all the while of the disputed strip, though outside of the old fence; for, so long as there is no actual entry and ouster, a man is constructively in possession of all the lands his titles cover, wherever his fences may be built.

The plaintiff might have availed himself of this principle if he could have shown that his title was older than the defendant's; but this was not shown, and where in ejectment there is a defect in the proofs, *potior est conditio defendentis.*

On the whole, we conceive there was no error either in the instructions given, or in the evidence admitted, and accordingly the judgment is affirmed.