## Sower's Administrator *versus* Weaver.

84 262
159 130

84 262
24 SC 233
24 SC 235

84 262
35 SC 464

84 262
38 SC 571

1. The evidence in this case sufficient to establish a parol gift of land.

2. A parol gift of land from a father to his son-in-law and daughter is empt from the operation of the Statute of Frauds when in pursuance of said 't possession is taken and valuable improvements made, and *a fortiori*, when the possession has been undisturbed for a great length of time, or the improvements have added largely to the value of the property.

May 10th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Error to the Court of Common Pleas of *York county :* Of May Term 1877, No. 138.

Ejectment by the administrator of George Sower against Henry Weaver for a tract of sixty-four acres of land. Weaver is the son-in-law of Sower.

The case was originally tried January 26th 1875, and the verdict was for the defendant. A writ of error was taken by the plaintiff and the judgment of the lower court reversed (see report of case in 28 P. F. Smith 448).

On the 26th of August 1875 George Sower made his will, wherein he appointed his son John his executor. The testator died on the 6th of June 1876, and his son John on the 10th of the same month. Letters of administration, c. t. a., were granted to John S. Deardorff, on the 21st of June 1876, and he was substituted as plaintiff in the suit. The cause again came on for trial on the 7th of January 1877, before Fisher, P. J.

On behalf of the plaintiff evidence was then given of the legal title to one hundred and fifty acres of land, of which the sixty-four in dispute formed a part.

George Sower was quite aged and infirm, and his deposition was read, wherein he deposed in answer to a question how Weaver came into possession of this land :—

" He held on for a home ; then I proposed I would build him a house on it ; he was at this time married to my daughter ; I said to him I did build a house on it, and told him he might have it for eighteen years, and might have all he raised on it. That was about twenty-six years ago, and he was to pay all the taxes on it, and build a barn on it ; he agreed to that ; our bargain was just by words ; he took possession of it, after we made that bargain ; in about two or three months after the bargain he went into possession ; the house that I built there, was built on it before he went into possession ; he built a barn on it ; but I had to pay the most of it, his credit wasn't present ; he staid there the eighteen years ; he had the income of it during that time, and paid the taxes on it ; when the eighteen years were up then they complained that I had given the boys homes and they had nothing—that is, Elizabeth and her husband ; then I proposed to them to give it to them, as I had

given land to the boys too—that is, at the township rates, what it was assessed at by the assessor; they were both together, Weaver and his wife, when I said this; it was in their house where they were living; they didn't make me much of an answer to it, and I told them they should consider it; all Henry Weaver said was, he'd like to have it for his own, but he couldn't take it; there was no more said about it, at that time; I had no conversation with him about it after that. I said to Weaver he must now pay me rent, either the third bushel or fifty dollars; he made no answer, hung his head and said not a word; I demanded rent several times up at his house, and several times here in the kitchen; he never said a word in answer; it's a little better than nineteen years now since I sold the Mine Bank school-house lot off of it; he was living in there where he is now living, there on the land; of course he knew at the time I sold that lot off; he was present and helped to measure it off; I got the money for the school-house lot; I know Henry Weaver has sent his children to school there; Weaver built nothing except the barn; he fenced and improved and limed it a very little."

There was other evidence for plaintiff of a similar tendency.

It was also in evidence that in 1853 George Sower had conveyed forty perches of the land, part of that occupied by defendant, to the Washington School District, to which conveyance it appeared defendant assented.

The defence alleged a parol gift from George Sower to Weaver and his wife, and gave evidence thereof, as follows:—

Elizabeth Weaver, the daughter of George Sower, testified: "If I live till the 25th of February I will be sixty-one years old; I live with my husband on the land in dispute; I married Henry Weaver thirty-four years ago; father said he would divide the farm where John lived on, and build a house if we would go on; I told him I did not want to go there, I could not be at home, and he told me he would build a house on it, and if I was there once and had my stuff there I would be at home; I told him the land was too poor, we could not live on it; he said I could make it good; we went on the land; there was no house on the land at the time he gave me the land; my father helped to build the house; he got the carpenter work of the house done; Weaver, my husband, got the other part of the work done; he dug the cellar and had all the mason work done which was done to the house; we moved in on Whit-Monday of 1846; Weaver put up the barn in 1846; we have been living there ever since; when we went there the land was as poor as could be. We could not have lived upon what the land produced at that time; I do not know that George Sower did anything towards building the barn; Weaver employed the workmen to build the barn and paid them; he paid taxes on the land; made fences; put lime on it; all the manure that we raised he put on; one year he got guano to put on the ground;

there is an orchard there—we planted the trees; garden there; Weaver laid out the garden and we fenced it—it is a clap-board fence; we planted fruit trees, apples, peaches, pears, plums, grapes and quinces; we dug the well; nothing more said than I have stated here before we took possession; I never asked him for a piece of land to build a house on; father never said how long we should live there; never demanded any rent or said we should give him any share during the time we lived there; I know they found ore on this land two years this last summer; I did not come to my father eighteen years after we went into possession and complain that the rest had homes and we had none, nor did my husband and myself go at the end of eighteen years; nor did he offer to give it to us at the rate it was assessed for taxation in the township; nor did he come at that time to our house and make such a proposition; when the school-house was about being built, father came to our house and asked whether we were willing the school-house should be built on that corner, and whether we were willing to give the land; we said we were willing, it would be so handy to send the children to school; I was never present when my father demanded rent from Weaver."

Henry Weaver testified: "In 1845, before I went on this land, George Sower and I went to look at it; I went up with him to look at the place to put the buildings; I said it is hard for me to build there unless I know what I was to do it for; he said he *did* give it to me and my wife for our own, and with that understanding I went into possession; then, in pursuance of that conversation, I dug the cellar and took possession, and put up the barn, and put up the garden fence, and made fence to keep the cattle out, and did work, and had more than I could do."

George Slyder testified: "I know Henry Weaver and George Sower, the parties to this suit; my mother lived, in 1845, in the fall, in Washington township; then I lived there; I was at my mother's, and Weaver was making fine wood for her; old Sower came there, and then the assessor, Jacob Gentzler, came; this was in the fall of 1845; the assessor asked the old man, how about that farm—should he assess it in his name; 'No,' said he, 'I gave it to Henry and his wife; they can do with it now what they please.'"

John Braugher testified: "At the time they were building the barn I had a conversation with George Sower about this property; he told me he had divided his property, and the big part he gave to John, 'and this small part I gave Betsey Weaver; I am going to build this house on it, and whenever the house is finished once Weaver may move in it; then he may fix it up to suit himself, and all he makes on it is his; then to fall to Weaver's heirs after his death;' after that Weaver did build a barn on the property; we paled the garden."

George S. Harbolt testified: "I know George Sower; about twelve or fifteen years ago I had a conversation with him; he told me that he had given that part of the farm to Henry Weaver and his wife, as part of her legacy."

Peter Benedict testified: "I know George Sower and Henry Weaver; I had a conversation with George Sower in relation to this action about a year ago; I was collecting tax for fire insurance for Henry Weaver; I went to Sower for the tax; I asked him what was the reason that him and Henry Weaver and his daughter could not settle the tax; he told me then that when Henry Weaver found out this ore, that Barbara and John told him he should chase Henry Weaver from this farm; that he went to Henry Weaver then; Weaver said he would not go off, and Barbara and John said he should get the sheriff and throw him out; then he said he had no rest until he sent the sheriff and went on with the lawsuit; Barbara and John were the cause of his having no rest, and the ore-bank on Henry Weaver's land; during this conversation he told me he did give this land to Henry Weaver and his wife Betsey."

Daniel Baker testified: "I know George Sower; had conversation with him in relation to the property; he told me how he divided his land amongst his children; how he helped John to the Harbolt farm, and George Sower he gave or sold the piece I live on; he said he gave Betsey the piece Henry Weaver lives on, who can do with that what he pleased."

Solomon Gross testified: "I farmed George Sower's land; he told me he gave land to Betsey; I was assessor over twenty years ago; I asked old George Sower in whose name it was to be assessed, whether in his name; he said no, I should assess it in Henry Weaver's name; he said he had nothing to do with that land; he said it belonged to Henry Weaver and his wife; I assessed it in Henry Weaver's name, and he paid me the taxes for it."

Jacob Lichty testified: "I know George Sower well; I had a conversation with him about the land Weaver lived on; I met him at Raffensberger's about the time Weaver was building his house; I said to Sower, 'You are going to build there;' he said, 'Yes, I have divided my land now; I have given the old stand to John now, and the other part to Henry Weaver, and they shall build on it, and then it shall be theirs, and then they have their own;' then he said, 'they will not have to pay any rent any more.'"

James Marshall testified: "I had a conversation with George Sower; I asked Sower if the property was Henry Weaver's or not; he said he gave his daughter Elizabeth, Weaver's wife, the piece of land, and to his children, and he had nothing to do with it."

David Myers testified: "I was the assessor in 1846; Jacob Kochenour and George Sower were the assistant assessors that year; we assessed the farm; Sower was present; we assessed it in

Weaver's name; ' This,' he said, ' assess to Weaver ; I gave it to Betz ;' I was the assessor after that, but cannot tell the years ; may be fifteen years after that ; Henry Weaver paid me the road tax."

Other testimony on this subject tended to corroborate the gift. That the property had been improved by the defendant was proved by the testimony of several witnesses, who also testified to the value of the buildings and other improvements.

George Sower was examined a second time on a rule to take testimony. He swore positively that he did not hear the conversation testified to by Elizabeth Weaver, about the giving of the land to her and her husband. To the various questions asked, he answered, " Not a word of it is true," as " nothing of the kind was said." He also denied that he had the conversations with the parties who testified as above.

The plaintiff's 4th and 5th points, together with the answers of the court, were as follows :—

4. That the defence in this case is an equitable one, and the evidence to sustain it must, to be available, be so direct, positive, express and unambiguous as to induce a chancellor to decree a conveyance ; that a chancellor must look at the whole evidence in the case ; that the whole evidence in this case leaves the alleged equity of the defendant in too great doubt and uncertainty to justify such a decree ; and upon the whole evidence in the case the plaintiff is entitled to recover.

Answer. " We affirm the first part of this point ; but we cannot say to the jury that the whole evidence in this case is in too great doubt to justify a decree ; it is for them to say what part of the evidence is true and what false ; and if they disbelieve the testimony of George Sower and believe the testimony of the witnesses offered to prove the gift, the evidence is sufficient to prove a parol gift and possession under the gift, and that valuable improvements were made by the defendant in pursuance of the gift."

5. That it is an undisputed fact in the case that in September 1853 (more than seven years after defendant was in possession under the alleged gift), George Sower the original plaintiff sold and conveyed a portion of the land embraced in said alleged gift to the Mine Bank School District and received the consideration for the same with the knowledge of, and without objection by, the defendant or his wife, and is inconsistent with and contradicts the inference of a parol gift, and of itself renders such alleged gift invalid, and plaintiff is entitled to the verdict of the jury.

Answer. " If the facts are as stated in the point it is correct, and we affirm it. But if the facts are as stated by Mrs. Weaver in her testimony that ' when the school-house was about being built George Sower came to our house and asked whether we were willing that the school-house should be built on that corner and whether

we would be willing to *give the land*, we said we were willing, it would be handy to send our children to school;' this agreement to sell the lot is not a fact that contradicts a parol gift, but it is a circumstance to be taken into consideration by the jury in determining whether there was or was not a parol gift."

The court, *inter alia*, charged:—

"Under the decision of the Supreme Court in the present case, the testimony of a husband and wife is not to be considered as two witnesses, and the gift must be proved by another witness besides the husband and wife, and that has been done if the jury believed the testimony of the witnesses for the defendant."

The verdict was for the defendant, and after judgment the plaintiff took this writ, assigning for error the admission of the foregoing evidence, the answers to the points and the portion of the charge quoted.

*Chapman & Fisher*, for plaintiff in error.—The rulings of the court cannot be sustained without overturning Ackerman *v.* Fisher, 7 P. F. Smith 457; Poorman *v.* Kilgore, 2 Casey 365; Harris *v.* Richey, 6 P. F. Smith 395, and a long line of other cases. The evidence in support of the defendant's equity was insufficient to establish the parol gift, and the case should not have been submitted to the jury: Shellhammer *v.* Ashbaugh, 2 Norris 24.

*George W. McElroy* and *John Gibson*, for defendant in error. —This parol gift of lands, accompanied as it was by possession and followed by valuable inprovements, is valid: Syler *v.* Eckhart, 1 Binn. 378; Postlethwait *v.* Frease, 7 Casey 474; Moore *v.* Small, 7 Harris 468; Eckert *v.* Eckert, 3 P. & W. 362; Hugus *v.* Walker, 2 Jones 174; Collins *v.* Collins, 2 Grant 117; Stewart *v.* Stewart, 3 Watts 253; Wack *v.* Sorber, 2 Whart. 387.

We claim to have proved a gift executed, possession in pursuance of it, and improvements adding to the permanent value of the land from year to year, by encouragement of the donor, and occupied in such manner and such peaceable and uninterrupted possession as would make it against equity and good conscience to enforce the rule of the statute against the donee.

In the cases of Aitkin *v.* Young, 2 Jones 15; Reed *v.* Reed, Id. 117; Hugus *v.* Walker, Id. 173, proof of title by parol was, left to the jury—whether there was a contract and possession in pursuance of a contract.

Mr. Justice GORDON delivered the opinion of the court, October 1st 1877.

That a parol gift, from a parent to a child, properly executed by possession and improvement, is valid, notwithstanding the Statute of Frauds and Perjuries, will be found to be the settled law of this state

[Sower's Adm'r v. Weaver.]

since the case of Syler v. Eckhart, 1 Binn. 378. The question is generally one of execution. As in parol sales where the performance has been carried so far, or is of such a character as to make compensation difficult or impossible, the contract is exempted from the operation of the statute. Such will also be the case with a gift where, in pursuance thereof, possession has been taken and valuable improvements have been made; this *a fortiori*, where this possession has been undisturbed for a great length of time or where the improvements have added largely to the value of the property. Time is always a powerful factor in questions of this kind. Equity is loth to undo a gift or contract at the instance of one who has neglected to move for its rescission until the passing years have grafted new equities upon the transaction, until the donee has grown old and has spent the vigor of his age and the prime of his manhood in the use and improvement of a property long regarded as his own. We pass to the consideration of the case before us. Was there sufficient evidence of a clear and distinct parol gift from George Sower to his son-in-law and daughter, and of its execution on their part, to submit to the jury? When the case was before us on a former occasion there was not such evidence. There was but the testimony of Weaver, which was at all distinct and positive as to the character of the gift; it was but meagerly sustained by coroborative evidence, and it was positively contradicted by George Sower, the alleged donor. Under these circumstances, we held, that the defendant had not made out such a case as would relieve him from the operation of the statute. As, however, the case is now presented to us we cannot say that the court did wrong in submitting it to the jury. It is true the testimony of Weaver and his wife is exactly what it was before, but the corroboration is much stronger and more precise, and the contradiction of the evidence of George Sower is so positive and complete as to render it of little worth. What we have to consider is not whether the defendant has made out such a case as would entitle him to a decree of specific performance, for it seems to be pretty well settled, in this state at least, that equity will not enforce a contract the consideration of which is only natural love and affection, but whether he has shown enough to prevent the disturbance of his possession by Sower's legal title. As we have seen, for this purpose, a gift, accompanied by possession, is sufficient. Now, turning to the evidence, we have, firstly, that of Weaver himself, which is the most distinct and positive. He says: "In the fall of the year 1845, before I went on this land, George Sower, Sr., and I went to look at it. I went up with George Sower and my wife to look at the place to put the buildings. To George Sower I said, it was hard for me to build there unless I knew what I was to do it for. He said he did give it to me and my wife for our own; and with that understanding I went into possession. Then, in pursuance of that conversation, I

[Sower's Adm'r v. Weaver.]

dug the cellar and took possession and put up the barn and put up the garden fence and made fence to keep the cattle out and did work and had more than I could do." It would seem, also, from the evidence, that, in addition to the improvements above mentioned, he planted fruit and shade trees and added considerably to the fertility of the soil by manuring and cultivation; that from and including the year 1845 the property has been assessed in his name, and during all this time, now some thirty odd years, he has paid the taxes, and, further, he has had the buildings insured in his own name. That the above statement of facts, if admitted, makes out a complete defence ought not to be doubted, for it contains every element necessary to constitute a valid parol gift. What remains, then, is to ascertain if these statements of Weaver are so corroborated by such other facts and circumstances as, taken together, are equivalent to another credible witness. We have, then, in addition to the defendant's long and undisturbed possession, a powerful circumstance in itself, the testimony of George Slyder, who says that in the year 1845, Gentzler, the assessor, in the presence of the defendant, inquired of Sower to whom he should assess this land now in suit, and that he, Sower, answered that it should not be assessed to himself but to Weaver; that he had given it to " Hen and his wife," they could do with it what they pleased. This declaration, made as it was when the parties were face to face, accompanied by the act of the assessment of the land to the defendant, by the direction of the one and the assent of the other of the parties, was not merely corroborative, but direct, independent and primary evidence of the gift. Moreover, there are the repeated declarations of Sower, from time to time, after Weaver was in possession, that he had given the land to him and his wife. He so said to David Meyers, the assessor for 1846, he, Sower, being assistant assessor for that year, also to Solomon Gross, another assessor, directing in each instance, the assessment to be made to the defendant. To Peter Benedict, after stating that he had given the land to Henry Weaver and his wife, he said he had brought the ejectment only at the urgent solicitation of his children John and Barbara, and this because of the increase in the value of the land by reason of the discovery of iron-ore upon it. Like declarations were made to John Brougher, George F. Harbolt, Daniel Baker, Jacob Lighty, James Marshall and Elizabeth Huntz. It is true a few of these witnesses speak of the gift as to Elizabeth, the wife alone, nevertheless it is all corroborative of the testimony of Weaver and consistent with it, for it all goes to show a continued recognition of the donation made in 1845, and, as it was intended principally for the benefit of Mrs. Weaver, it is not remarkable that he should sometimes omit her husband's name when speaking of it. From all this we do not see how the court could have refused to submit this case to the jury. So great is the array of testimony in support and corroboration of the defence that,

[Sower's Adm'r *v.* Weaver.]

if a parol gift of land can be made out at all, it would seem to have been so done in this instance.    The assertion of ownership by Sower in 1853, by the sale of one-fourth of an acre of this land to the school directors of Washington township, was, undoubtedly, significant and important, but we cannot say that it was conclusive, and we think it was properly left, under the explanation of the defendant and his wife, to the jury.

Judgment affirmed.

SHARSWOOD, J., dissented.