George W. Reiter *v.* James McJunkin, Appellant.

*Division line—Acts and declarations of parties—Evidence thereof.*

What constitutes the recognition of a division line depends upon the acts or declarations of the parties who are interested therein. Whether or not these acts and declarations are binding is a conclusion to be drawn therefrom.

Offers of evidence as to such acts and declarations are properly rejected when so broad as to take for granted the very point in controversy.

*Evidence—Act of* 1887—*Party to thing in action, dead.*

The right of G. had passed to plaintiff; G. was dead. The defendant was incompetent to prove an agreement for a consentable line between him and G. in G.'s lifetime.

*Division fence does not per se abandon land fenced out.*

A man is under no legal or moral obligation to set his fences on and not within the line of his land, and the mere fact that one does so and cultivates only to his fence, gives the neighbor no right to the land fenced out unless by ownership rights exercised for over twenty-one years.

Argued May 3, 1898. Appeal, No. 42, April T., 1898, by defendant from judgment of C. P., No. 3, Allegheny Co., Feb. T., 1894, No. 514, on verdict for plaintiff. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Ejectment. Before KENNEDY, P. J.

The following facts appear in the charge of the court below:

This action is brought for the recovery of possession of a piece of land situate in Plum township. The parties, plaintiff and defendant, are the respective owners of farms adjoining each other in this township. The strip of land in dispute in this case, being about half an acre, lies along the dividing line between the two farms, the question being as to the location of the real, or true division line.

The plaintiff claims it to be as fixed and located by the original patents and the location of that line, which he maintained is the true one, he claims to have shown clearly by the testimony of the surveyors, Cooper and Kuhn, and other witnesses.

The defendant claims that even if this line claimed by him, is not identical with that of the patents, yet it has been recognized as the true division line between these farms for more than twenty-one years by the present owners and their predecessors in title, who have claimed and occupied the land up to the same on their respective sides for more than twenty-one years, and that his title to the land in controversy, being on the south side of this line, is complete, and he asks for a verdict from this jury.

Verdict for plaintiff for six and one fourth cents damages and costs of suit. Defendant appealed.

*Errors assigned* were (1) in rejecting the following offer by the defendant: "I propose to show by the witness on the stand, Wm. McJunkin, that during the time that Mr. Grubbs owned the farm now owned by Mr. Reiter, that he, the witness, and Mr. Grubbs, recognizing the line in existence between them, cut timber, each on his own side of the line, and that the line recognized as existing between Mr. Grubbs's farm and the McJunkin farm is the line for which the defendant in this action now contends; this for the purpose of establishing and showing where the true line is." (2) In sustaining plaintiff's objection to the following offer on part of defendant: "I propose to prove by the witness on the stand (defendant) that during the ownership of the Reiter farm by Mr. Grubbs, he, the witness, and Mr. Grubbs mutually recognized the line now claimed by defendant as the true line between the two farms; and that in a conversation between the witness and Mr. Grubbs, the white oak tree which the witness has just referred to was spoken of as being the line tree, and that Mr. Grubbs and he agreed to cut the tree down because it had been partially destroyed by lightning." (3) In sustaining plaintiff's objection to the following question: "Q. Mr. McJunkin, do you know, during the occupancy of the farm, part of which you now occupy, by your father and the occupancy at the same time, of the Reiter farm by the Stuart family, who then owned it, where the recognized line between the farms was located?" (4) In sustaining defendant's objection to the following offer of evidence on part of defendant: "I now propose to prove by the witness on the stand that during the time when Mr. Andrew Grubbs, now deceased, owned the farm now owned by Reiter, that he, Andrew Grubbs, went upon the ground with the witness, pointed out to him a line tree and showed him a line between the two farms, and that the witness and Mr. Grubbs agreed as to where that line was; not for the purpose of establishing a line, but for the purpose of showing what each of the parties recognized to be the true line between them." (5) In refusing defendant's fourth point, which point and answer are as follows: "4. That the pointing out of the line between the farms by Mr. Grubbs, after having had the same surveyed, and the erection of a fence and cultivation of the land by Grubbs and those claiming under him, up to the line so claimed and

pointed out, for more than twenty-one years, fixed the boundary of the farm, even though the line recognized, pointed out and built upon by him, may not have been the true patent line. *Answer :* This point is refused. This action alone by Grubbs would not fix the boundary line so as to bind his successor in the title, the present plaintiff in this action, unless it was followed by claim and occupancy up to that line by the defendant, and those through whom he claims, for more than twenty-one years before the bringing of this suit." (6) In the answer to and refusal of defendant's fifth point: "5. That the fact that J. Murry Carpenter and R. F. Logan, in 1869 and 1870 respectively, ran the line in controversy, Mr. Carpenter for Mr. Grubbs, and Mr. Logan for Mr. McJunkin, that they agreed as to the location, and that the owners of the respective farms, Grubbs and McJunkin, accepted these surveys, and the line so run in 1869 and 1870, continuously thereafter for more than twenty-one years, is conclusive upon both parties, and if the jury find these undisputed facts, they must find for the defendant. *Answer :* This point is refused, because the facts therein stated are not undisputed, as I understand."

*J. McF. Carpenter*, for appellant.—Where adjoining owners have for twenty-one years recognized and adopted a marked line as their mutual boundary, they are each protected thereafter by the statute of limitations ; and this, though it is not the line mentioned in the deed: Kuhns v. Fennell, 15 Atl. Rep. 920 ; Lindell v. McLaughlin, 30 Mo. 28.

Again, it has been held that where parties agree upon a division line expressly or by long acquiescence, such line shall not be disturbed. Buildings and permanent improvements may be made upon the faith of the location of the line ; transfers may be made, and to permit such lines to be altered might be productive of incalculable injury : McCormack v. Barnum, 10 Wend. 105. See also Dibble v. Rogers, 13 Wend. 536.

In Jackson v. Widger, 7 Cowen, 723, it was held that a surveyor who settled a line for plaintiff was his agent for that purpose, and though not correct, the plaintiff was concluded after twenty years' acquiescence.

When Reiter bought he had notice of the location of the fence built by Grubbs, and of the fence on same location for

years before. He also saw McJunkin's barn and that the fence surrounding the barnyard was attached to the line fence as claimed by defendant. Having these facts before him, he was bound to inquire if he doubted the location of the line. He cannot go outside the boundary fixed more than twenty-one years before and of which he was thus given notice: Hagey v. Detweiler, 35 Pa. 412.

*J. H. Miller*, of *Miller & McBride*, for appellee.

Opinion by Beaver, J., July 29, 1898 :

No diagram or map of the land in dispute and of the different lines and corners referred to in the testimony and history of the case has been furnished us by either party. It is always difficult to consider a case of this kind satisfactorily, and it is practically impossible to understand the testimony fully, without such a map. We have, however, endeavored to make a careful study of all the testimony and think we have a clear understanding of the case generally. The assignments of error, however, relate exclusively to the rejection of offers of testimony made by the defendant and answers to his points.

This case was twice tried in the court of common pleas of Allegheny county and was reviewed by the Supreme Court, as reported in 173 Pa. 82. The directions of the Supreme Court in regard to the submission to the jury of the question of the alleged division or line fence between the parties seems to have been carefully observed by the trial judge and are not complained of. We will, therefore, confine ourselves to a brief consideration of the assignments of error.

The first and third of these assignments relate to offers made by the defendant as to where the recognized line between the farms was located. Although somewhat different in form, the effect of the offers is the same. What constitutes the recognition of a division line depends upon acts or declarations of the parties who are interested therein. Whether or not these acts or declarations are binding is a conclusion to be drawn therefrom. We think the offers were properly rejected by the court, as being too broad and as taking for granted the very point in controversy. It is true that in the offer included in the first assignment of error the defendant offered to show

that each of the parties to the action had cut timber on his own side of the line, which fact in itself was relevant and competent evidence, but he makes this conclusive in the offer by assuming that this act amounted to a recognition of the line, whereas it was but a single fact from which the jury were to be allowed to draw the conclusion as to whether or not the line was thereby recognized by the parties. Besides, as is pointed out by the appellee, the court subsequently allowed the witness to testify fully on this point and the defendant had the benefit of this testimony before the jury.

The second and fourth assignments relate to the same question. The effort in both cases was to prove by the defendant conversations between the defendant and Grubbs, the plaintiff's predecessor in title, and declarations by Grubbs as to the line between them. The objections to these offers were sustained by the court and the testimony ruled out. The defendant was clearly an incompetent witness for such a purpose, under the provisions of section 5, paragraph *e* of the act of May 23, 1887, P. L. 158. The language of this paragraph is very plain and seems to us to fully justify the ruling of the court below: "Nor where any party to a thing or contract in action is dead or has been adjudged a lunatic and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract, or any other person whose interest shall be adverse to the said right of such deceased or lunatic party be a competent witness to any matter occurring before the death of said party or the adjudication of his lunacy." The right of Grubbs had passed to the plaintiff. Grubbs was dead. The defendant, therefore, was incompetent, as a witness, to prove an agreement for a consentable line between him and Grubbs in his lifetime.

The answer of the court to the defendant's fourth point is correct. As was said by Mr. Justice WOODWARD in Potts v. Everhart, 26 Pa. 493 : "A man is under no legal or moral obligation to set his fences on and not within the lines of his land," and the mere fact that Grubbs set his fence within his line and cultivated only to the fence gave the defendant no right to the portion fenced out, unless the defendant had exer-

cised rights of ownership therein and thereto, as was pointed out by the court, "for more than twenty-one years before the bringing of this suit."

The premises upon which the defendant's fifth point was based were not correct and an affirmative answer thereto was very properly refused.

This disposes of all the questions involved in the case.    The case was fairly tried and the jury had full and clear instructions as to their duty in regard to the facts involved.

Judgment affirmed.