# Greenwich Coal & Coke Company, Appellant, v. Learn.

*Gift—Coal lands—Title—Parol gift—Statute of Frauds—Exclusive possession—Adverse possession—Improvements—Receipt of produce—Payment of taxes—Statute of Limitations—Declarations of occupant—Evidence—Charge—Appeals.*

1. In an action under the Act of June 10, 1893, P. L. 415, on an issue to determine the title to coal under a certain piece of land, in which plaintiff claims under a deed from defendant's father and defendant claims under a prior parol gift from his father followed by possession and valuable improvements made, a verdict for the defendant will be sustained where the evidence produced by him is full, complete, satisfactory and clear; and upon a favorable view the jury could have definitely found the boundaries and the quantity of land claimed; that the parties to the gift had been brought face to face; that the gift had been made in express, direct, positive and unambiguous language, that it had been repeatedly acknowledged by the donor, and as often asserted by the donee; that, in pursuance of the gift, the latter had gone upon the property and made valuable improvements, the cost of which he had defrayed out of his own and his wife's money, with the knowledge and approval of the donor; that the change from father to son was notorious, and the defendant had maintained open, adverse and exclusive possession of the property continuously for more than twenty-one years; and that it was understood and agreed between the father and the son that the delivery of certain grain grown on the land by the son to the father during his life was in payment for work done by the father in clearing the land.

2. When, in such a case, it appears that at the time of the gift to the defendant there had not been any severance of the title to the coal, the actual possession of the surface carried with it the

actual possession downward perpendicularly through the various strata.

3. A verdict for defendant in such a case will not be reversed on appeal, although the trial judge in speaking of the character of possession required of the defendant failed to use the term "exclusive possession" in a particular part of his charge, where there was nothing in the language used in this portion of the charge, or in that employed in any of the instructions, which excluded the idea of the necessity for "exclusive possession" and there appears no doubt, taking the charge as a whole, but that the jury must have understood the necessity for absolute possession by the defendant.

4. Where in such a case a conflict in the evidence leaves in doubt the nature of the arrangement whereby the father received one-third of the grain grown by the son on the land, whether it was given as rent or otherwise, the court commits no error in leaving it to the jury to find what the real bargain was.

5. In such a case whether the bargain to pay the one-third of the grain to the father was made at the time of the gift or later on would not necessarily fix the nature of the obligation. It might have been made after the son went into possession, independently of the gift, out of appreciation of services performed by the father in clearing the property, without of necessity being a rent or acknowledgment of the father's continued control over the land, or it might have been a unilateral contract made at the time of the gift, and yet not be a rent or in the nature thereof.

6. In such a case the trial judge commits no error in refusing to instruct that "the statute of limitations would not run in favor of the son so long as he paid any of the proceeds of the farm to the father" and in answering that this depended on how the jury might find the fact as to whether or not the son paid rent.

7. In actions involving the character of the occupancy of land, the occupant's own declarations while in possession of the premises as well as the understanding of his neighbors are proper evidence of the character of his claim. Such declarations accompanying his acts, constitute part of the *res gestae,* and as such are always received in evidence in questions of possession.

8. Payment of taxes is an element in the proof of possession under a claim of title.

Argued Oct. 23, 1911. Appeal, No. 209, Oct. T., 1911, by plaintiff from judgment of C. P. Indiana Co., Dec. T., 1907, No. 233, on verdict for defendant in case of Greenwich Coal and Coke Co. v. Elias Learn. Before

FELL, C. J., MESTREZAT, POTTER, ELKIN, STEWART and MOSCHISZKER, JJ. Affirmed.

Action under the Act of June 10, 1893, P. L. 415, on an issue to determine the title to coal under a certain piece of land. Before O'CONNOR, P. J., specially presiding.

The plaintiff claimed under a deed from Peter Learn dated September 9, 1902. The defendant claimed under a parol gift from Peter Learn made in 1880 or 1881 followed by possession and valuable improvements made. The plaintiff proved its title by deed and rested. The defendant produced testimony that his father, Peter Learn, had the land surveyed and gave it to him, saying, "to go and rid it up and put his buildings on it, it was his," and "go on and farm it; it is yours, but give me one-third of the grain." Prior to this Peter Learn had taken the timber brush and logs off a considerable part of the land, but the stumps had not been removed; and he said to his son, "I give it to you, but you clear it out...." The son took possession, built a house, took out the stumps, improved the land, and has lived continuously upon the premises with his family ever since. For the greater part of the time the land was assessed in his name, and he paid the taxes upon it. The change of assessment was made at the request of Peter Learn who told the tax assessor that his son owned the land. Peter Learn had also made gifts of about the like number of acres to other of his sons, and the defendant produced a witness who testified that Peter had said to him "that the other boys had to go into the woods and clear it. Elias was to give him one-third because part of his was clear before he went on." And, "He said Elias owned it (meaning the land)." And further, "That Elias was to farm the land to suit himself as it was his own." To another witness Peter said that "He expected one-third of the grain that Elias raised because he had cleared part of the land for him." A host of witnesses

were produced who gave testimony of declarations made
to them by Peter Learn that the farm belonged to Elias
as his own property, and that Elias was giving him one-
third of the grain for the work that he Peter had done in
clearing the land.  When Elias desired to make im-
provements upon the property, he said to his father,
"My wife has money and I could get the money from her,
but we have no deed for this property and she don't like
to use her money;" to which Peter replied, "Do you
think that I would give you a piece of land and turn
around and take it from you?  It is yours.  Tell her to
use her money."  Other witnesses testified that in their
presence Peter had said to Mrs. Learn to go ahead and
put her money in the land; that it was Elias's property.
In 1902 Peter Learn said to the agent of the parties to
whom he subsequently sold the coal, referring to the
land under which it lay, "At one time I owned all this;
I gave them to the boys."  And he then pointed out the
various tracts and showed where the several boys lived.
The agent, who was upon the land for the purpose of
renewing an option which his principals afterwards
took up, asked Peter how he could lease the coal under
such circumstances, and Peter replied, "When I gave
them this land there was nothing thought or said about
the coal; we did not know anything about coal then."
Testimony was produced to show that Elias always and
repeatedly referred to the land as his own, that it was
generally known throughout the district as his property,
and that before the purchaser paid for the coal Elias had
notified it not to do so because his father did not have
the right to sell.  The plaintiff produced witnesses to
rebut parts of this testimony, but the only evidence
which attacked the exclusive possession of Elias was the
fact that the father usually went upon the land each
year at threshing time and received his one-third of the
grain, together with the tax records showing that no
land was assessed to Elias until the year 1892.

The court submitted the case to the jury.   Verdict for defendant and judgment thereon.   Plaintiff appealed.

*Errors assigned:* (1)  refusal to direct verdict for the plaintiff; (2)  refusal of judgment non obstante veredicto for the plaintiff; (3)  a portion of the charge stating the elements necessary to a verdict for the defendant, in which the term "exclusive possession" was not used; (4)  part of the charge in which the trial judge told the jury they were to decide in what capacity defendant occupied the land, whether as tenant or owner, and that if he occupied it as a tenant the verdict would have to be for the plaintiff; that the plaintiff contended the delivery of one-third of the grain by Elias to his father "was an acknowledgment that he was there only as a tenant and that the father still exercised control over that property, and that of itself should be sufficient to find that the defendant was not there claiming it absolutely as his own;" adding, "this is replied to by the defendant saying that in as much as a certain amount of clearing had been done upon this farm, that in order to even him up with the rest, he should make some return.... he was not bound to make any specific return, but nevertheless one-third of the grain that he raised upon that place should be given to his father in payment of the amount he was relieved from clearing on that property;" after which the court said, "You will be required to find that fact so that you may have the entire matter before you."   (5)  Part of charge making reference to the testimony concerning the assurance given by Peter Learn to Mrs. Elias Learn that she could safely put her money in the property, and adding, "that is argued by the defendant as convincing, and from what they say you will have no difficulty in finding that Peter Learn did give absolutely this property to Elias."  (6) Part of charge in reference to the testimony as to tax assessments in which the court calls attention to the fact that 53 acres were transferred in 1895 from the

name of Peter Learn to that of Elias Learn. (7) Refusal to instruct that if Peter after the date of the alleged gift required a share of the proceeds of the land and Elias complied, "this shows that Peter Learn still retained control over the land and that he had not made an absolute gift," adding, "If the jury find, therefore, that the payment of rent was imposed on Elias after the gift or after he took possession, the verdict must be for the plaintiff." (8) Refusal to instruct that "the Statute of Limitations would not run in favor of Elias so long as he paid any of the proceeds of the farm to Peter Learn." And answering, "The answer to this point depends upon the finding of fact." (9-10-11 and 12) The affirmance of certain points submitted by the defendant in which the word "possession" is used without the word "exclusive" in connection therewith. (13) The affirmance of a point of defendant, "Time is a powerful factor in cases of parol gift or sale of land. Equity is loath to undo a gift or contract for one who has failed to move for its rescission until passing years have grafted new equities upon the transaction, until the donee is grown old, spent the vigor of his age in the use and improvement of a property long regarded as his own;" the answer being, "This point is affirmed. It is the language of the Supreme Court in Sower v. Weaver, 84 Pa. 262." (14) The admission of testimony as to the general reputation in the community concerning ownership of the property. (15) The admission of testimony of declarations by the defendant while upon and in possession of the land in dispute, as to the character of his ownership.

*Ernest Stewart,* with him *John A. Scott and Samuel Cunningham,* for appellant, cited Allison v. Burns, 107 Pa. 50; Greenlee v. Greenlee, 22 Pa. 225, Hill v. Meyers, 43 Pa. 170, and Rankin v. Simpson, 19 Pa. 471.

*William Banks,* with him *Harry White* and *J. N. Banks,* for appellee.—A parol gift of land from a parent

to a child, properly executed by possession and improvement, is valid, notwithstanding the Statute of Frauds and Perjuries, especially, where in pursuance thereof, possession has been taken and improvements made; this a fortiori, where this possession has been undisturbed for a great length of time, or where improvements have added largely to the value of the property. Sower v. Weaver, 84 Pa. 262; Syler v. Eckhart, 1 Binn. 378; Matthews v. Matthews, 11 Pa. Super. Ct. 381; Caldwell v. Caldwell, 24 Pa. Super. Ct. 230; Hart v. Carroll, 85 Pa. 508; Mahon v. Baker, 26 Pa. 519.

OPINION BY MR. JUSTICE MOSCHZISKER, January 2, 1912:

The evidence produced by the defendant was full, complete, satisfactory and clear, and upon a favorable view the jury could have definitely found the boundaries and the quantity of land claimed; that the parties to the gift had been brought face to face; that the gift had been made in express, direct, positive and unambiguous language; that it had been repeatedly acknowledged by the donor, and as often asserted by the donee; that, in pursuance of the gift, the latter had gone upon the property and made valuable improvements, the cost of which he had defrayed out of his own and his wife's money, with the knowledge and approval of the donor; that the change from father to son was notorious, and the defendant had maintained open, adverse and exclusive possession of the property continuously for more than twenty-one years; and that it was understood and agreed between the father and the son that the delivery of one-third of the grain by the latter to the former during his life was in payment for work done by the father in clearing the land. These findings would have been sufficient to sustain a verdict for the defendant: Mahon v. Baker, 26 Pa. 519; Sower v. Weaver, 84 Pa. 262; Hart v. Carroll, 85 Pa. 508; Allison v. Burns, 107 Pa. 50;

Hyde-Murphy Co. v. Boyer, 229 Pa. 7; Caldwell v. Caldwell, 24 Pa. Superior Ct. 230. So much has been written upon the general law applicable to the subject in hand that it would serve no good purpose to review it here. The authorities all hold that a case such as the present is not within the Statute of Frauds, and that where a man under circumstances like these has spent the best part of his life improving a piece of land for a home, compensation in damages is not adequate.

At the time of the gift to the defendant there had not been any severance of the title to the coal, and, therefore, the "actual possession of the surface carried with it the actual possession downward perpendicularly through the various strata:" Caldwell v. Copeland, 37 Pa. 427. While there was some evidence that the defendant was in possession of the land before the completion of the gift, there was evidence to the contrary; hence that issue was for the jury: Hyde-Murphy Co. v. Boyer, 229 Pa. 7; Mahon v. Baker, 26 Pa. 519. The court could not have directed a verdict for the plaintiff, and no error was committed in refusing judgment non obstante veredicto in its favor. The first two assignments are overruled.

Although the trial judge failed to use the term "exclusive possession" in the particular part of the charge called to our attention by the third assignment, yet there was nothing in the language there used, or in that employed in any of the instructions, which excluded the idea of the necessity for "exclusive possession." The jury were told that they must inquire "Was there an absolute gift....? Did Elias go into possession of the land, following this gift; do as his father had suggested, build his buildings upon it, pay taxes for a time, have it all to himself and claim it absolutely as his own....? If the gift was not of that character....and Peter Learn held control of this property during the occupancy of his son, Elias, then he is not entitled to a verdict, and the verdict will be for the plaintiff." Again, in the de-

fendant's points the terms used are "undisturbed possession" and "claiming it as his own against every person and has so continued in such possession." There is no doubt but that the jury must have understood the necessity for exclusive possession by the defendant. The assignment in question is overruled.

There is no merit in the fourth assignment. The trial judge left it to the jury to find what the real bargain was between the father and son as to the delivery of the one-third of the grain. He called attention to the contention on each side, and the language employed at the end of the instruction was evidently intended to convey to the jury the thought that they were to find which was true in point of fact, so that they might consider the entire case from that view-point. The assignment is overruled.

The fifth assignment fails to quote all that was said by the court in connection with the instruction complained of therein. If the language employed is taken with its context, it is not likely that the jury could have understood it as a direction to find the particular fact referred to in favor of the defendant; it is more probable they understood that the court merely meant to call their attention to the fact that the defendant argued that they should have no difficulty in finding that Peter Learn made an absolute gift of the land to Elias. While this portion of the charge was not as nicely phrased as it might have been, we are not convinced that the plaintiff suffered any harm therefrom, and the assignment is overruled.

We see no error in the sixth assignment. All the cases hold that the payment of taxes is an element in the proof of possession under a claim of title, and if the plaintiff desired the court to call attention to the fact that the land was assessed to Peter Learn prior to the date mentioned in the instruction, it should have so requested. The assignment is overruled.

Had the court affirmed the point in the seventh assign-

ment it would have been equivalent to instructing the jury that the delivery of the grain was the payment of a rent, and that the verdict should be for the plaintiff. Whether or not the one-third of the grain was a rent depended upon the facts. It nowhere appeared in the evidence that Peter Learn had ever so designated it, and all his declarations were inconsistent with such an idea. As before indicated, that issue was for the jury and was properly submitted. This assignment is overruled.

The eighth assignment criticises the answer made by the trial judge to the effect that the running of the Statute of Limitations in favor of the defendant depended upon how they might find the fact as to whether or not Elias paid rent. We see no error in this, and the assignment is overruled.

The matters covered by the next four assignments are sufficiently disposed of in our discussion of the third assignment. These assignments are overruled.

Although there was no testimony to show that the defendant had "grown old," yet we cannot say that any substantial harm was done by the instruction complained of in the thirteenth assignment; it is overruled.

The testimony quoted in the next two assignments, concerning declarations by the defendant and others, was properly admitted. As to the admission of such testimony, we have said, "His (the occupant's) own declarations while in possession of the premises as well as the understanding of his neighbors, was proper evidence of the character of his claim:" Kennedy v. Wible, 11 Atl. Repr. 98. "Such declarations accompanying his acts, constitute part of the res gestæ, and as such are always received in evidence in questions of possession:" Potts v. Everhart, 26 Pa. 493. "The character of possession of a party as stated by himself while in possession is part of the res gestæ": Susquehanna & Wyoming Valley R. R. & Coal Co. v. Quick, 68 Pa. 189. These assignments are overruled.

Before concluding we note that it is not clear how

much of the testimony of the defendant was intended to be stricken from the record; but we do not take it that the first part covering the language and the time of the gift was affected by the order of the court. However that may be, whether the bargain to pay the one-third of the grain to his father was made at the time of the gift or later on, would not necessarily fix the nature of the obligation. It might have been made after the defendant went into possession, independently of the gift, out of appreciation of the services performed by his father in clearing the property, without of necessity being a rent or acknowledgment of Peter Learn's continued control over the land; or it might have been a unilateral contract made at the time of the gift, and yet not be a rent or in the nature thereof. The repeated declarations of Peter Learn to the effect that he had given the land to his son, and as to the arrangement for the delivery of the grain, made when the parties were face to face, accompanied by the act of the assessment of the land to the defendant by the direction of his father, constituted strong evidence of a gift: Sower v. Weaver, 84 Pa. 262, 269; Matthews v. Matthews, 11 Pa. Superior Ct. 381; Caldwell v. Caldwell, 24 Pa. Superior Ct. 230. It may also be well to note that the equities of this case are with the defendant. He was not only in actual possession of the land, which was enough to put the purchasers of the coal upon inquiry as to his title (Hottenstein v. Lerch, 104 Pa. 454; Rowe v. Ream, 105 Pa., 543; White v. Patterson, 139 Pa. 429), but, if the evidence of his witnesses is to be believed, and the verdict shows that it was, he served actual notice of his claim of title before any purchase money was paid. After reading the testimony and reviewing the entire record, we feel that the evidence was sufficient to sustain the verdict and that no reversible error was committed in the trial.

The judgment of the court below is affirmed.