## Ackerman *et al.* *versus* Fisher *et al.*

1. In parol contracts between father and child, clearer and stronger evidence is required of the father's intention to part with his ownership of the property than in cases between strangers in blood.

2. To establish a parol contract between father and son, the evidence must be *direct*, positive, express and unambiguous, and the contracting parties must be brought face to face.

3. The witnesses must have heard the bargain when it was made or must have heard the parties repeat it in each other's presence; a contract is not to be inferred from the declarations of one of the parties.

4. When it is sought to enforce a parol contract for the sale of land the payment of the price must be proved positively. Every presumption is against the claimant under such a sale.

5. In a parol sale there must be proof that the vendee took possession in pursuance of the contract. It is the notoriety of a change of possession that more than anything else takes a case out of the Statute of Frauds.

March 18th 1868. Before STRONG, AGNEW and SHARSWOOD, JJ. THOMPSON, C. J., at Nisi Prius. READ, J., absent.

Error to the Court of Common Pleas of *Northampton county:* No. 333, to January Term 1868.

This was an action of ejectment, by Reuben Fisher and Mary his wife in her right, against George Ackerman and John Ackerman, for a messuage and lot of one acre and a half of land. The writ was issued June 13th 1865. After the suit had been commenced, Mrs. Fisher died, and her heirs were substituted.

The premises in question were part of a larger lot conveyed to George Ackerman April 4th 1859. To April Term 1862, the plaintiffs recovered a judgment against John Ackerman, and, alleging that John owned the premises in dispute, caused his interest in them to be sold by the sheriff under their judgment; they bought them at the sheriff's sale, and a deed was made to them May 5th 1865. They then instituted this action. The title of John was alleged to be a parol sale from George, who was his father.

McFall, a witness for plaintiffs, testified that George told him he had sold the lot to John, who was then in possession of it; there was a blacksmith shop on it then, but no house; they were about commencing to build; George named the price, which the witness did not recollect; nothing was said about possession, nor the time of sale, nor how or when the purchase-money was to be paid.

[Ackerman *v.* Fisher.]

Stocker, another witness, said that George told him he had sold the shop and lot to John for $600. . There were fences around three sides of the lot and a road in front.

Albert, who was a carpenter, testified that he built a house on the lot; John employed him; George was frequently there whilst the house was being built; he told the witness he had sold the lot to John for $600; John told witness often that he had bought the lot.

Ruch testified that at the sale of George's property by the sheriff, George was there; the sheriff and the crowd said they could not sell the lot in dispute for John was at the war; George did not say anything.

Speer testified that he sold lumber and nails to John while the house was being built, and charged them to John; George paid witness for the lumber and nails; he got judgment against George and John for them.

Holland, a mason, testified that he did the masonwork for the house; John paid him.

Shuman testified that John had paid another merchant, through witness, for lumber.

Meyers testified that he did hauling for the house, for which John paid him.

The defendants asked the court to instruct the jury to find for them. The court refused so to charge, and instructed the jury to find for the plaintiffs.

The jury found "in favor of the plaintiffs."

The defendants took a writ of error.

Their 1st and 2d assignments of error were the answer of the court to their point; the 3d, 4th and 5th to portions of the charge involving the same principle; the 7th, that the finding of the jury was too vague and uncertain.

*W. W. Schuyler*, for plaintiffs in error, referred to Moore *v.* Small, 7 Harris 468; Irwin *v.* Irwin, 10 Casey 525; Haslet *v.* Haslet, 6 Watts 464; Brawdy *v.* Brawdy, 7 Barr 157; Woods *v.* Farmare, 10 Watts 204; Charnley *v.* Hansbury, 1 Harris 21; Robertson *v.* Robertson, 9 Watts 42; Poorman *v.* Kilgore, 2 Casey 371; Goucher *v.* Martin, 9 Watts 109; Meyers *v.* Byerly, 9 Wright 372; Frye *v.* Shepler, 7 Barr 91; Greenlee *v.* Greenlee, 10 Harris 226; Parker *v.* Wells, 6 Wh. 162; Postlethwait *v.* Frease, 7 Casey 474; McKee *v.* Phillips, 9 Watts 86; Eckert *v.* Eckert, 3 Penna. R. 362; McKowen *v.* McDonald, 7 Wright 441; Syler *v.* Eckhart, 1 Binn. 378; 1 Story's Eq., § 476; Bash *v.* Bash, 9 Barr 262; Pennock *v.* Freeman, 1 Watts 407; Workman *v.* Guthrie, 5 Casey 510; Henderson *v.* Hays, 2 Watts 148; Freetly *v.* Barnhart, 1 P. F. Smith 281; Gale *v.* Gale, 2 Cox 145; Hunt *v.* McFarland, 2 Wright 69.

[Ackerman v. Fisher.]

*E. J. Fox*, for defendants in error, referred to 1 Story's Eq., §§ 761, 765; Moore *v.* Small, 7 Harris 466; Tyson *v.* Passmore, 7 Barr 273; Tryon *v.* Carlin, 5 Watts 371; Ross *v.* Barker, Id. 391; Clement *v.* Youngman, 4 Wright 342; Hawn *v.* Norris, 4 Binn. 77; Lyons *v.* Miller, 4 S. & R. 281; Thomas *v.* Culp, Id. 271.

The opinion of the court was delivered, March 23d 1868, by

STRONG, J.—The alleged parol contract of sale, upon which the plaintiffs below founded their claim to recover in this case, was made, if made at all, between a father and a son. In such a case it has more than once been said that clearer and stronger evidence is required of the father's intention to part with his dominion over, and ownership of, the property, than is required in cases of parol contracts between strangers in blood. This is because a parent and child do not commonly deal with each other as they deal with strangers. There is a mutual confidence that is not watchful against assertions of right founded on the expressions of the one or the other. Nothing is more common than that a father speaks of a farm, upon which he has placed a son, as the son's farm, or a house in which he permits the son to live, as the son's house. It is every day's occurrence that a father speaks of having given a lot of ground to a son, when it is plain there was no intention to transfer the ownership. And such language is not confined to parol gifts. When a father says, I sold such a piece of real estate to my son, he generally means no more than that he agreed that the son might have it for a consideration. He does not necessarily mean that his own dominion over it has ceased, and that a sale has been executed. Were courts to look at the language of parents, expressed to others, as evidences of title in children, it would annihilate domestic confidence, and it would doubtless, in most cases, be giving an effect to loose declarations that was never intended. Upon this subject the remarks of this court in Eckert *v.* Mace, 3 Penna. R. 365, and in Poorman *v.* Kilgore, 2 Casey 372, are full of meaning. When an attempt is made to set up a parol contract of sale against a father, either by his son, or one claiming under the son, the evidence of the contract must be *direct*, positive, express and unambiguous. Not only must the terms and conditions of the contract and its subject be well and clearly defined, but it has been held, that the contracting parties must be brought together face to face. The witnesses must have heard the bargain when it was made, or must have heard the parties repeat it in each other's presence. A contract is not to be inferred from the declarations of one of the parties. If it could be, it might be enforced against one party and not against the other. See Taylor *v.* Henderson, 2 Wright 60.

In the case now before us there was no direct evidence of any

[Ackerman *v.* Fisher.]

contract between George Ackerman and his son John. No witness was present when the sale was made, if it ever was; the parties to it were not brought together, and there was no proof that they ever acknowledged the bargain to each other. The plaintiffs below relied entirely upon declarations of the father made to strangers, that he had sold the lot to John, and one declaration that he had sold it for $600, but without any mention of the time when he had sold, or when the consideration was to be paid, or when possession was to be given. Nor was it ever said, so far as appears, how the purchase-money was to be paid, or whether it had been paid. Of the son's assent to any bargain nothing was proved, except that he said to a stranger he had bought the lot, without mentioning the date of his purchase or the price agreed to be paid, or asserting its payment, or stating when he became entitled to possession. To call this direct, positive, express and unambiguous evidence of a contract of sale, with its terms and conditions well defined, is impossible. There is nothing in all that was proved that would ever have enabled the father to maintain an action on the contract against the son.

And even if there were sufficient evidence of a contract, there was no satisfactory proof that the purchase-money was paid. All that there was, is found in one declaration of the father that he had sold for $600. In a case where it is sought to enforce a parol contract for the sale of land, the payment of the price must be proved positively. It cannot be left to conjecture. Every presumption is against a claimant under such a sale. He asserts a right against the plain language of a statute. It is not enough for him that he shows, either that a contract may have been made, or that the price may have been paid, or that possession may have been taken under the contract and in pursuance of it. None of these essentials to a right in him can be left in uncertainty. But it is obvious the father may have sold for $600, and yet the purchase-money never have been paid. An assertion of a sale for a specified price does not necessarily imply that the price has been paid.

There is still another fatal defect in the case of the plaintiffs below. There was no proof that John Ackerman took possession of the lot under the contract and in pursuance of it, if one was ever made. This was indispensable, as numerous cases show. He was in possession after the father said he had sold the lot to him. But when did he enter? Was it before the parol sale or after? The evidence does not answer. If before, his possession was worthless as evidence of an executed parol sale. It is the notoriety of a change of possession in execution of the parol contract that, more than anything else, takes a case out of the Statute of Frauds.

It might be added that the evidence was very defective of the

[Ackerman v. Fisher.]

value of the improvements made, and that it does appear George Ackerman, the father, paid in part for them. He paid for lumber and nails. But, placing no reliance upon this, it is enough that there was no such proof of a contract, or of the payment of the purchase-money, as the law requires, and there was no clear evidence that John Ackerman went into possession under the contract, in pursuance of it and on the faith of it. The court should therefore have affirmed the point of the defendants, and instructed the jury that they were entitled to the verdict. Of course there was error also as averred in the 3d, 4th and 5th assignments. The 6th is immaterial, and the 7th is not sustained. The verdict was sufficiently certain.

Judgment reversed, and a *venire de novo* awarded.