## Edwards and wife *versus* Morgan.

1. A plaintiff in ejectment who seeks to recover upon an alleged equitable title, against the holder of the legal title, stands in the place of a vendee out of possession under an oral contract of sale, and must show a case which in equity would entitle him to a decree for specific performance.

2. Where a son-in-law or one claiming under him, attempts to prove a parol contract for the sale of land out of the statute of frauds, against a father-in-law, the same strict rules obtain as to sufficiency of proof, as in case of a son against a father.

3. In an action of ejectment by A. who claimed through the son-in-law of B., against C., daughter of B. and his grantee under a subsequent deed (in consideration of natural love and affection, and as an advancement of $600), the evidence relied upon by A. was, the testimony of certain witnesses to whom the parties to the alleged contract had declared, in the absence of each other, the one that he had sold, and the other that he had bought the lot in question; also, proof that the alleged vendee had taken possession of the premises and built a store and dwelling thereon, and that on one occasion he had taken certain papers partially out of his pocket and told the witness that they were title papers for the lot: *Held,* that the evidence was insufficient to be submitted to the jury.

4. The declarations of the alleged vendee under such circumstances, made in the absence of the vendor, are incompetent evidence on the part of the plaintiff.

April 14th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

ERROR to the court of Common Pleas of *Luzerne county :* Of January term 1882, No. 46.

Ejectment, by Charles E. Morgan and E. S. Morgan, against P. D. Edwards and Elizabeth, his wife, Thomas Long and Benjamin Long, for the recovery of half an acre of land and improvements thereon, situate in Ross Township, Luzerne county. The writ issued January 13th 1877. On October 11th 1881, Thomas and Benjamin Long, lessees of the premises, and P. D. Edwards, filed a disclaimer, leaving, as defendants, Elizabeth Edwards and P. D. Edwards, in right of his wife.

On the trial, before WOODWARD, J., it was conceded by both

[Edwards v. Morgan.]

parties that, in 1869, the title to this land was in Frederick
Nagle, father of Elizabeth Edwards. The plaintiffs alleged that
Nagle sold the lot in 1870 to P. D. Edwards, and claimed as
purchasers of it at a sheriff's sale held November 18th 1876,
under an execution issued on a judgment obtained against Ed-
wards by certain creditors in the same year. Plaintiffs could
produce no deed from Nagle to Edwards, but claimed that he
had acquired title under a parol contract of sale not within the
statute of frauds. This they endeavored to prove by introduc-
ing evidence to show that Edwards bought the land in 1870
from Nagle, and paid him $75 for it ; that he immediately took
possession of the property and paid for digging a cellar ; and
that he contracted for lumber to put up a store upon it, and
paid the men employed to make these improvements. The
evidence introduced in proof of these facts was the testimony of
certain witnesses, consisting of conversations between them and
Nagle, and between them and Edwards, in which Nagle de-
clared that he had sold the lot to Edwards, and Edwards de-
clared that he had bought the lot of Nagle—on one occasion
pulling some papers partially out of his pocket and declaring
that they were the title papers—and it was testified by one wit-
ness that these declarations were made by Nagle and Edwards
in the presence of the witnesses and of each other.

On the other hand, both Edwards and Nagle, in their testi-
mony, denied any sale of the land to Edwards, and at the
sheriff's sale the defendants gave public notice that the title to
this land was not in P. D. Edwards, but in Elizabeth, his wife.
Defendants produced a deed from Frederick Nagle and wife to
Elizabeth Edwards, dated February 27th 1873, and duly re-
corded, the consideration being natural love and affection and
the sum of $1. The deed also contained a statement that it was
to be considered as an advancement to the daughter of $600.

Plaintiffs offered to prove : " that in 1873 Edwards was in-
solvent, that unsatisfied judgments for a large amount had been
recovered against him and could not be collected. This, in
connection with other testimony in the case, was offered as
showing fraud, which would avoid the conveyance under which
Elizabeth Edwards claimed—fraud on the part of herself, her
husband and her father." Objected to by the defendants as ir-
relevant. Objection overruled. (2d assignment of error.)

The defendants offered to prove by Sarah Nagle, wife of
Frederick Nagle, " that long before the deed was made to their
daughter, Elizabeth Edwards, the property had been given to
her (Elizabeth) as an advancement." Objected to by plaintiffs.
Objection sustained. (4th assignment of error.)

The defendants also submitted the following points.

2. The evidence in the case showing without dispute that

[Edwards *v.* Morgan.]

the debt of Kneedler, Patterson & Co., upon which the sale was made, and under which plaintiff's claim title, was contracted on the third of March, 1874, more than a year after the deed to Elizabeth Edwards was made and recorded, viz., February 27th 1873, the plaintiffs cannot recover without showing that the conveyance was made for the express purpose of defrauding the said firm of Kneedler, Patterson & Co., and there being no evidence of such intention or attempt, the plaintiffs cannot recover in this action against Elizabeth Edwards.

Answer. If this case depended simply upon a question of fraud, we could affirm that point. But in our judgment it depends upon other questions. Hence the request to give you binding instructions that the plaintiff cannot recover because of fraud we must deny. We decline to affirm the point. (7th assignment of error.)

3. That under the undisputed evidence in this case, the legal title to the land in controversy was in Frederick Nagle, February 27th 1873, when he conveyed the same to his daughter, Elizabeth Edwards; and that although P. D. Edwards may have had the equitable title to the land at the time, still the legal title could be made with his assent to his wife, Elizabeth Edwards, so as to vest in her an indefeasible title, provided this was not done in fraud of the creditors of said P. D. Edwards. That there is no evidence in the case of creditors of said Edwards existing at the time of said conveyance to Elizabeth Edwards, and no evidence of an intent on the part of P. D. Edwards to defraud his creditors, and, therefore, the verdict must be for the defendant, Elizabeth Edwards.

Answer. There is a great deal of law, no doubt, in that point, but for the reasons given in our answer to the last point read, we cannot affirm it. (8th assignment of error.)

4. That the plaintiff cannot recover without showing an actual intent on the part of Edwards to defraud creditors at the time the deed was made to his wife, of which no evidence has been given in the case, and therefore the verdict must be for the defendant, Elizabeth Edwards. Refused. (9th assignment of error.)

5. That there is no evidence in this case showing any title to the land in suit in P. D. Edwards, either by deed or contract in writing from Frederick Nagle, nor sufficient evidence of any parol contract not within the statute of frauds. Refused. (10th assignment of error.)

The court further charged the jury, inter alia, as follows: ["No conveyance from the husband is shown. No assignment of any possible title in him to the wife is shown; and, therefore, the case stands at last upon the naked question, whether or not, on the 27th of February 1873, Frederick Nagle was the owner

of this real estate. If he had parted with the title to his son-in-law, as claimed by the plaintiffs, in 1870, then he had no title in 1873 which he could convey to his daughter."] (5th assignment of error.)

["If Frederick Nagle was the owner of the real estate in question in 1869, and so being the owner did, in 1870, bargain with his son-in-law, P. D. Edwards, for the sale to him of that lot, and P. D. Edwards did agree verbally to buy from his father-in-law the premises, and in pursuance of that agreement did pay to his father-in-law the price fixed between them for the land, and having paid the price, did take possession of the land so far as to go upon it, exercise ownership over it, wall up a cellar upon it, buy lumber and build buildings upon it, incur indebtedness and pay the same in improving the property ; if you believe that possession was continuous, open, notorious—then if all these circumstances be found in the affirmative, according to the testimony of the plaintiffs' witnesses, we say to you, as matter of law, a good title has been shown, although resting in parol, and the statute of frauds will not prevent a recovery by the plaintiffs in the case."] (6th assignment of error.)

Verdict and judgment for the plaintiffs. Whereupon the defendants took this writ, assigning for error the admission and rejection of this evidence as above noted, the answers to their points and those portions of the general charge included in brackets.

*Palmer* (with him *De Witt & Fuller*), for plaintiffs in error. —The plaintiffs below were not entitled to recover unless they established one of the following propositions. (1) That P. D. Edwards, having an equitable ownership in this land, collusively caused the said conveyance to be made to his wife, Elizabeth Edwards, for the purpose of defrauding his creditors. (2) That P. D. Edwards had such prior outstanding title to this land from Nagle as, per se, avoided the conveyance to Elizabeth Edwards. Of the first proposition no evidence was given. In the endeavor to establish the second no legal title by deed or other instrument was shown, and no equitable title out of the statute of frauds was shown : Hart *v.* Carroll, 4 Norris 510. The proofs offered by them were vague declarations by Frederick Nagle twelve years ago, that he had let his son-in-law, Edwards, have a lot of land ; declarations by Edwards in 1870 that he had bought certain lands, and again in 1873 that he had bought certain other lands; proof that in 1870 a storehouse was built on part of the land, but not of its having been paid for at the sole expense of Edwards, and finally, proof that Edwards did business in the store. There was, therefore, (1) no clear, direct, precise and indubitable proof of a contract : Rid-

[Edwards *v.* Morgan.]

del *v.* Dixon, 2 Barr 372; Moore *v.* Small, 7 H. 469; Ackerman *v.* Fisher, 7 P. F. S. 457. (2) No sufficient evidence designating boundaries: Woods *v.* Farmare, 10 Watts 204; Shellhammer *v.* Ashbaugh, 2 Nor. 24. (3) Nor of possession taken under this contract: Ackerman *v.* Fisher, supra. (4) Nor of consideration paid. (5) Nor of such valuable improvements as could not be compensated in damages: Irwin *v.* Irwin, 10 Casey 525.

Even if a valid equitable title by parol contract had been shown in P. D. Edwards prior to the conveyance, still the legal title might have been taken with his assent, in his wife's name, so as to vest in her an indefeasible estate, if this were not done in fraud of his creditors.

*E. P. & J. V. Darling,* for defendants in error.—The case shows a valid transfer of title from Nagle to Edwards, in 1870, by a parol contract of sale, out of the statute of frauds. In Hart *v.* Carroll, 4 Nor. 512, Mr. Justice WOODWARD says: "Rigid as the rules of law are that are prescribed for this class of controversies, it is still the law that 'where a parol contract of sale is precise as to its terms and subject, and the vendee has taken possession in pursuance of it and made valuable improvements with the assent of the vendor, it is not within the statute of frauds.'" And see McGibbeny *v.* Burmaster, 3 P. F. S. 332; Milliken *v.* Drave, 17 P. F. S. 233.

Where there has been a change of possession, and other circumstances, such as payment of a part of the price, it has been invariably held that the sale is good without writing: Mitchell on Contracts for sale of land in Pennsylvania. The land in question was at the intersection of two cross-roads, and thus separated from all other lands of Nagle, and the conversations by Nagle and Edwards with the witnesses took place upon the land itself or within sight of it. There could be no question, therefore, as to the land referred to.

That there was a contract by which Nagle sold and Edwards bought this land in 1870, and took possession, and paid the purchase money, and made valuable improvements on it, is shown by the declarations of Nagle and Edwards to the witnesses called. The possession of Edwards was continuous and exclusive. The offer of the evidence of Sarah Nagle was incompetent, as tending to contradict her own deed.

Mr. Justice TRUNKEY delivered the opinion of the court October 2d 1882.

The court rightly charged that the evidence discloses no fraud or collusion by Nagle and Edwards to defraud creditors of

[Edwards v. Morgan.]

Edwards, or any attempt on the part of Edwards to delay, defraud or hinder his creditors, and that under the testimony, either Edwards or Nagle had the right to convey the land in dispute to Elizabeth Edwards. Although the plaintiffs were allowed to prove fraud against the creditors in the judgment upon which the land was sold at sheriff's sale, if they could, they failed, and the jury were not permitted to find the fact.

It is true that an equitable title to land may be surrendered by parol, or that a parol contract for sale of land may be orally cancelled, but there was no evidence that Edwards surrendered such title to Nagle, or that the alleged contract was cancelled. Both testified that no contract for sale and purchase of the land was ever made between them, and nothing was proved respecting Edwards' assent that the deed should be made to his wife. If a good title had been vested in Edwards, it was not divested by Nagle's conveyance of the legal title to another person. The defendant's second, third and fourth points, resting upon the assumption that Edwards had surrendered an equitable title and assented to the conveyance made by Nagle, were properly refused. Nor was there error in the instruction set out in the fifth assignment. The chief question is, whether there was sufficient evidence of a parol contract for the sale of land by Nagle to Edwards, and of the other requisites essential to the plaintiffs' case, to submit to the jury. If not the sixth and tenth assignments must be sustained.

P. D. Edwards' title, if he had any, was vested in Charles Morgan and E. S. Morgan by the sheriff's deed. They have precisely the right which he had at and before the time of the sheriff's sale. Nagle's title was vested in Elizabeth Edwards by deed dated February 27th 1873. She is in possession. The plaintiffs seek to recover upon an alleged equitable title against the holder of the legal title. They stand in the place of a vendee under an oral contract, who is out of possession, and the defendant, in place of the vendor in possession. To succeed, they must show a case which, in equity, would entitle them to a decree for specific performance. Where a chancellor under the evidence if true would refuse to decree the specific performance of the alleged contract, the court should instruct the jury that the plaintiff cannot recover: Taylor v. Henderson, 2 Wr. 60. The claim is a purely equitable one. In a court of equity where the contract alleged in the bill is denied by a sworn answer the complainant is compelled to maintain it by two witnesses, or by what would be equivalent thereto. As long as equitable ejectments may be maintained, and equitable defences set up against legal titles in ejectment, the same rule and measure of justice must be applied, whether the proceeding be at law or in equity: Sower v. Weaver, 28 P. F. S. 443.

[Edwards *v.* Morgan.]

Where a parol contract is precise as to the terms and subject matter, and the vendee has taken possession in pursuance of it and made valuable improvements with the assent of the vendor, it is not within the statute of frauds: McGibbeny *v.* Burmaster, 3 P. F. S. 332. Its terms must be shown by full, complete satisfactory and indubitable proof. The evidence must define the boundaries, indicate the quantity of the land, fix the amount of the consideration, establish that possession was taken in pursuance of the contract, and show such performance or part performance by the vendee as would make rescission inequitable and unjust: Hart *v.* Carroll, 4 Nor. 508. If the alleged contract be of recent date, these rules will be more rigidly applied than if long time had elapsed and the vendee had been in continuous adverse possession for many years.

When an attempt is made to set up a parol contract of sale against a father, either by his son or one claiming under the son, the evidence of the contract must be direct, positive, express and unambiguous. "The contracting parties must be brought together face to face. The witnesses must have heard the bargain when it was made, or must have heard the parties repeat it in each other's presence. A contract is not to be inferred from the declarations of one of the parties:" Ackerman *v.* Fisher, 7 P. F. S. 457. The burden is no lighter when the alleged contract is set up by a son-in-law, or one claiming under him. In such case it is likely to be an attempt to take from the daughter what the father intended for her. The same rules are applicable when the claim is made by a son, should be as strictly applied to the claim of a son-in-law.

What is the evidence relied on to establish a contract? Nothing but declarations by one party in the other's absence. No witness heard the parties make a bargain or acknowledge to each other that there was one. Edwards apparently took possession in the spring of 1870, and proceeded to build a store and a dwelling-house. His possession and improvements were consistent with either a sale of the lot to himself, or a gift of the lot to his wife. Soon after he began to make improvements, Benscoter heard Nagle and another man talking of the lot. The stranger said, "I understand that you sold P. D. a piece of land." Nagle replied: "Why, well, yes, partly; I didn't get much for it." Stranger: "I understand that you got $75 for it." Nagle: "Yes, but that ain't much; I wouldn't have sold it to anybody else for that." Another witness, Weitzell, testifies that Nagle said to him: "When I sold that land to P. D. Edwards, he agreed to dig this cellar, wall it up and move the house and make the cellar as good as where the house now stands." No other witness heard any declaration as to the terms of the contract. These and others often heard

[Edwards v. Morgan.]

Nagle say he had sold the lot to Edwards, and Edwards told a number that he had bought it and paid for it. When Edwards was purchasing lumber he once told the lumber dealer that he had bought the land and paid for it, and had the papers to show for it, partly pulling some papers out of his pocket; but he showed no deed or written contract for the land.

Only two witnesses heard any declaration respecting the terms of the contract, and they did not hear the same thing. Neither length of time nor other circumstance exists to relieve the plaintiffs from making the strict proof required by the general rules to take the contract out of the operation of the statute of frauds. Nagle and Edwards both testify that they never made a contract for sale and purchase of the land. At least their testimony is equivalent to the sworn answer of the defendant in an equity suit, denying the contract alleged in the bill. Taking all the testimony as competent and true, a chancellor could not declare that the terms of a contract are shown by full, satisfactory and indubitable proof, by the testimony of two witnesses, or the equivalent of two, and he would refuse a decree for specific performance. But the declarations of Edwards, made in absence of Nagle, clearly were incompetent proof on the part of the plaintiffs, to establish a contract, or payment of the consideration. Before the sheriff's sale, in a suit by Edwards for the land, he could have shown the extent of his claim and how he claimed, while in possession; but not his own declarations to strangers. He could not tell strangers that he had a contract with Nagle and what it was, and afterwards prove by them what he had said for the purpose of defeating Nagle's title. Contracts are not made or proved in that way. Nor can the plaintiffs holding under him, prove such declarations where, as here, there is no evidence of a conspiracy or fraudulent collusion between Nagle and Edwards to cover up or give false color to the title.

The defendant offered to prove by the wife of Frederick Nagle that long before the deed was made to their daughter, Elizabeth Edwards, the property had been given to her as an advancement, which offer was rejected. Had the plaintiffs' testimony been sufficient to submit, we think this offer would have been admissible. The deed was "in consideration of love and affection and as an advancement from his estate to the amount of $600." It was consistent with a prior parol gift of the land, and if there was such gift, it would be pertinent to consider the fact, especially with reference to the possession of P. D. Edwards, husband of Elizabeth Edwards.

Judgment reversed.