## Allison *et al. versus* Burns.

1. To take a parol gift of land out of the operation of the statute of frauds, the gift must be shown by proof which is credible and of such weight and directness as to make out the facts alleged beyond a doubt. The evidence must designate the land, must show open, notorious, exclusive possession taken and maintained in pursuance of the gift; that the improvements which constitute the consideration were made on the faith of the promised conveyance, and that compensation in damages would be inadequate.

2. Where the contracting parties are not parent and child such gift may be proved by the acts and declarations of the parties either together or separately; and, if the contract be of recent date, the above rules will be more rigorously applied than if a long time has elapsed and the donee has been in continuous adverse possession for many years.

3. In an action of ejectment the defence was a parol gift to the defendant, A, of the lot, by B, his uncle. In support of this A. introduced the testimony of eight or ten witnesses to the effect that B. erected a house on the lot in 1867, and that while the building was going up he stated that it was being built for A.; that to several of the witnesses he said he had money of A.'s in his hands which he was using to build the house and that when it was completed he intended to give the lot to A.; that to others B. stated, after the house was finished and A. had taken possession, that he had given A. the lot as a gift, and it was his. A. retained open, notorious and exclusive possession of the premises for about fifteen years without any claim being made by B. or his representatives. During this time he built a kitchen, pig pen and chicken house, laid a board walk, sodded the yard and set out trees. After B.'s death his residuary legatees claimed the premises and brought ejectment.

*Held*, that the evidence was sufficient to support a parol gift to A., and to take the case out of the operation of the statute of frauds; and that, in view of the long time which had elapsed, the death of B., and the consequent incompetency of A. as a witness, it would be inequitable to oblige him to resort to his action at law for damages.

May 28th, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Mifflin county:* Of July Term, 1884, No. 2.

Ejectment, by Elizabeth M. Allison *et al.* against Albert C. Burns, to recover possession of a certain lot of ground in the township of Granville, Mifflin county, Pa.

Both parties claimed through James Burns, deceased, the plaintiffs under his last will and testament, which was duly proved October 30, 1879, and the defendant under an alleged parol gift made by said Burns in 1867.

On the trial, the following facts appeared: James Burns in his lifetime was the owner of a large tract of land in Mifflin county. Some time prior to 1867, he divided a portion of it, lying near the Pa. R. R. station, into building lots, one of

[Allison v. Burns.]

which formed the subject of dispute. Its size, location and boundary was not questioned.

The plaintiffs put in evidence the will of James Burns, in which he devised the residue of his estate (including, as alleged, the lot in dispute) to them ;—and rested.

The defendant, Albert C. Burns, claimed that James Burns, who was his uncle, had in his possession certain money belonging to him and his brother Joseph, and that with their consent and with this money James Burns erected a house on the lot, which when finished he gave, with the lot, to them the said Joseph and Albert Burns. That James Burns thus put his two nephews in possession of the property in 1867 under a parol gift, and they so continued, until the death of Joseph in 1876 unmarried and without issue, from which time Albert retained possession as sole owner.

In support of this position, the defendant called ten or twelve witnesses who testified to the erection of the house as above set out; that while the building was going up James Burns repeatedly stated that he was erecting it for Albert and Joseph; To several of the witnesses he stated that he had in his hands money belonging to Joseph which he was using to build the house, and that when it was completed he intended to give the lot to Albert and Joseph : To others he stated, after his nephews had entered into possession, that he had given them the lot as a gift and that it was theirs. (The testimony of these witnesses is set out at length in the opinion of this Court).

James Burns was declared a lunatic in 1875 and died about five years afterwards, never having claimed title to, or rent for the premises in dispute, after 1867.

After taking possession, Albert and Joseph Burns built a kitchen to the house, enclosed the lot with a fence, built a pig pen and chicken house on the premises, laid a board walk, planted trees, sodded the yard and made general improvements, costing, as defendant claimed, about $200, while the lot alone was worth about $150.

Plaintiffs submitted the following points :

" That the evidence on the part of the defendant, of a parol gift or contract, is too indefinite, fragmentary and contradictory to make a title to the premises in dispute and prevent a recovery thereof in this suit." Refused.

" That the evidence of the defendant shows that the house and improvements on the premises were not fully paid for by him, and that therefore he has not acquired such a title to the premises as will prevent a recovery in this case." Refused.

" That if there was a gift or contract for the premises between defendant and James Burns, the circumstances of

[Allison *v.* Burns.]

the case are such that the improvements, payments and expenditures will admit of compensation, and it would not be unjust to rescind the same." Refused.

" That under all the circumstances and evidence in this case, plaintiff is entitled to recover." Refused.

The Court in the general charge instructed the jury as follows :

" The contention is that Burns, the uncle, had the funds of the defendant and his brother Joseph, which he invested in the erection of a house on the lot in dispute with the intention of giving it to them, and that in pursuance of that intention he did so give it to them ; that they entered into the notorious and exclusive possession of the premises immediately after the house was completed in 1867, and remained in the possession until this time ; that this possession was taken in pursuance of this gift, and that they erected a kitchen on the lot, built a fence, chicken house, board walk, planted fruit trees and covered the front yard of the premises with sod. If the jury find all these facts in favor of the defendant, we instruct you that it would be unjust to rescind the contract and that the plaintiff cannot recover. . . . . .

" In determining these questions the long-continued possession of the defendant for fifteen years without challenge is an element of the evidence that the jury may consider in reaching a correct conclusion."

Verdict for the defendant and judgment thereon ; whereupon the plaintiffs took this writ assigning for error the refusal of their points, and that part of the general charge above quoted.

*T. M. Uttley, A. Reed* and *D. W. Woods* for plaintiffs in error. —It has never been held that when compensation can be made, specific performance will be decreed. Clearing and fencing land, erecting farm buildings and planting an orchard, in pursuance of a parol contract, have been held such improvements as can be compensated in damages and will not take a case out of the statute of frauds : McKowan *v.* McDonald, 7 Wr. 442. The improvements made by defendant in this case will admit of compensation and the Court erred in not so instructing the jury. Besides, the defendant has been more than compensated by the use of the premises : Miller *v.* Hartle, 3 P. F. S. 108 ; Postlethwait *v.* Frease, 7 Casey 472 ; Sower *v.* Weaver, 28 P. F. S. 443 ; Shellhammer *v.* Ashbaugh, 2 Norris 24 ; Edwards *v.* Morgan, 4 Out. 330.

*John A. McKee* and *Ezra D. Parker* for defendants in error.—The defendant's proof of a parol gift was sufficient to

take the case out of the statute: Hart v. Carroll, 4 Norris
50; Gilday v. Watson, 2 S. and R. 407; Moss v. Culver, 14
P. F. S. 415; Bassler v. Niesley, 2 S. & R. 352. Defendant's
possession was taken under the parol gift and has been con-
tinuous and notorious. Where there is clear proof of the
parol gift, or terms of parol sale, designation of the boundaries,
possession in pursuance of contract and valuable improve-
ments, the case is taken out of the statute of frauds: Eberly
v. Lehman, 4 Outerbridge 542; Jamison v. Dimock 14 Nor.
52; Hart v. Carroll, 4 Nor. 508; Reed v. Reed, 2 Jones
117; Monahan v. Colgin, 4 W. 437; Clarke v. Vankirk, 14 S.
& R. 354; Milliken v. Dravo, 17 P. F. S. 230; Troup v.
Troup, 6 Norris 150; Lee v. Lee, 9 Barr 169; Young v.
Glendenning, 6 Watts 509; Sower's Adm'r v. Weaver, 3 Nor.
262; Moss v. Culver, 14 P. F. S. 415.

Mr. Justice CLARK delivered the opinion of the court
October 6th, 1884.

The plaintiffs in this ejectment claim the premises in dis-
pute as residuary legatees, under the last will and testament of
Gen. James Burns, deceased, probated 30th October, 1879.
The defendant claims the same under an alleged parol gift,
made by said Burns in the year 1867. As the defendant is
the party praying interference of the chancellor, the burden
of proof devolves upon him; to succeed, he must show a case
which in equity will entitle him to a decree for specific per-
formance. In the trial of the cause, it was the duty of the
court, if the evidence offered or adduced failed to make out
such a case as was entitled to stand as an exception to the
statute of frauds, either to reject it or to instruct the jury that
there could be no recovery upon it: Poorman v. Kilgore,
2 Casey 365; but where proper evidence is given, if the
material parts of it are in conflict, or the credibility of the
witnesses is involved, the case must go to the jury, with such
express instructions as may be suited to any proper view they
may take of the testimony or of the veracity of the witnesses:
Moore v. Small, 7 Harris 461.

To take the case out of the operation of the statute of frauds,
the gift must be shown by full, complete, satisfactory and
indubitable proof, that is to say, such proof as is credible, and
of such weight and directness as to make out the facts alleged
beyond a doubt: Hart v. Carroll, 4 Norris 510. The evidence
must designate the land, must show that open, notorious and
exclusive possession was taken and maintained, under and in
pursuance of the gift; that the improvements which consti-
tute the consideration, were made on the faith of the promised
conveyance; that compensation in damages would be inade-

quate, and rescission, therefore, unjust and inequitable: Moore
*v.* Small, 7 Harris 469; Woods *v.* Farmare, 10 Watts 204;
Frye *v.* Shepler, 7 Barr 91; Hart *v.* Carroll, 4 Norris 510;
McKowen *v.* McDonald, 7 Wr. 441.

As the alleged contracting parties do not bear the relation
of parent and child, they are not, in the proof of the gift, to
be brought together face to face; it is not requisite that the
witness shall be a person who was actually present at the
making or rehearsal of the contract; the gift may be suffi-
ciently established, by the acts and declarations of the parties,
either together or separately: McGibbeny *v.* Burmaster, 3 P.
F. S. 332; Ackerman *v.* Fisher, 7 Id. 457; Edwards *v.* Morgan,
4 Out. 330.

The acts or declarations relied upon, must not, however, be
of an equivocal character; they must have such clearness and
directness as will leave no doubt as to their meaning and
purpose.  If the alleged contract be of recent date, these rules
will be more rigorously applied than if a long time had elapsed,
and the donee had been in continuous adverse possession for
many years:  Edwards *v.* Morgan, *supra;* Sowers *v.* Weaver,
3 Norris 262.

James Burns, in his lifetime, was the owner of lands in
Mifflin county, and some time prior to the year 1867, he laid
off a portion lying near the station of the Pennsylvania Rail-
road Company into building lots.  The lots were laid out
with reference to certain streets and alleys, which were opened,
and the controversy here is as to one of these lots, the size,
location and boundary of which is in no way called in question.
It is identified as the second lot, according to the plan, upon
which was built the house now occupied by Albert C. Burns.
Albert C. and Joseph Burns were the sons of a deceased
brother.   In order to establish a gift of this lot by James
Burns to them, a number of witnesses was examined.   From
the testimony of these witnesses, we learn that about the year
1867, James Burns erected a small dwelling house upon this
lot, and that whilst the building was in process of erection, he
repeatedly stated that he was building the house for Albert
and Joseph Burns; statements to this effect were made to
some ten or twelve witnesses.  To several of the same witnesses
he stated that he had in his hands money of Joseph Burns
which he was using to build the house, and that when it was
completed he intended to give *the lot* to Albert and Joseph;
to a number of them he stated, after his nephews had entered
into the possession, that he *had given* them the lot as a gift,
and that it was theirs.  The theory of the defendant is that the
house was built with the money of Albert and Joseph Burns,
in James Burn's hands, and that the gift was of the lot only.

[Allison v. Burns.]

Samuel Bilford testifies as follows:—"James Burns called me in, while passing the building, and stated that he was building the two houses jointly; he said that the one house he was building for Joseph Burns and Albert his brother, . . . . that Joseph Burns had given him money for the purpose of consummating the house. He intended to add some money with the money he had received from Joseph Burns, and when it was completed he was going to give Joseph Burns and Albert a deed for the same, that the house was theirs; he owed this to Joseph and Albert Burns on account of their father, who was a brother."

William Holland testifies:—"After the cellar was finished, he came to me to haul sand. . . . . . 'Now,' says he, ' I have given Albert this second lot—the second lot belongs to the boys. I am going to make him a present. I have $300 of Joe's money in my possession, and,' says he, 'I will not give him that money, but I have come to the conclusion that he will spend it and have nothing to live on, and now I am going to put it into this house.' . . . . . After the house was built, Albert took possession, and, if I mistake not, Joe was in the office then at the railroad. 'Now,' says he, ' this house is Albert's and Joe's; I gave it to them, it is their house.' . . . . After the house was finished and Albert was in it, he wanted a kitchen; the old gentleman came to me, . . . . . says he, ' I built him a house and gave him a lot; he wants me to build a kitchen . . . . . he can build it himself.' "

David Criswell states that he wanted to purchase of James Burns a portion off the foot of the lot, but Burns told him that he could not sell it, that it belonged to " the boys," Albert and Joseph, that he had given it to them. To John Brown, the decedent said he was putting up the house for Albert and Joseph, that it would be a poor thing if an uncle as rich as he was could not afford to give his nephews a home. In 1873, he said to James McCafferty that he had built the house for Albert and Joseph, and that he made it a present to them.

James S. Galbraith testifies to the payment to James Burns, by Joseph Burns, of money to be applied to the building of the house, and states that James Burns admitted that the *house* would soon be paid for; to Alfred Hale, however, he afterwards admitted that the house was fully paid for. There is no denial or contradiction of these facts; the plaintiffs have produced no witnesses to testify to any act or declaration of the defendant, or of his deceased brother, inconsistent with his claim in this suit, or the truth of the facts proven; in this respect the case at bar is readily distinguishable from that class of cases of which Rankin *v.* Simpson, 7 Harris 474, is one. There is, perhaps, some indistinctness as to the precise time

[Allison *v.* Burns.]

when these respective declarations were made, but enough appears as to time to indicate that admissions of a gift were distinctly made before, about the time of and after the donees had gone into the possession. It also appears, clearly, that possession was taken in pursuance of the gift, and not other-wise. The gift was in contemplation whilst the house was being built, and its completion was urged by the donor in order that the donees might enter into the enjoyment of it. The possession was open, notorious and exclusive, and has been maintained for fifteen years and upwards, prior to the bringing of this suit, eight years of that time being before the date of the adjudication of James Burns' lunacy, in which time no claim of title or for rent appears to have been made, nor has any other act of ownership or authority been exercised over the premises by James Burns or his trustee in his lifetime or his heirs since his death, until the bringing of this suit. What the cost of the house was, or how much James Burns contributed to it if anything, does not clearly appear; it is esti-mated to be worth $800, the lot about $150. It would appear, however, that a considerable part of the money, if not all, which was used in the construction, was the money of Joseph or Albert Burns.

After the lapse of fifteen years, under the facts of this case, we think it would be unjust and inequitable to oblige the defendant to resort to the remedy at law for damages. Such a lapse of time would render the proof of his claim and the settlement of his accounts exceedingly difficult, perhaps impossible. James Burns, who was the custodian of the defendant's money, is now dead. Joseph Burns is also dead, and the defendant himself is thereby rendered incompetent as a witness. We are of opinion that the evidence in this case is sufficient to establish a parol gift, that enough has been shown to take the transaction out of the statute of frauds, and that under the special facts shown it would be unjust to rescind it, and that the court was justified in submitting the cause to the jury.

                              The judgment is affirmed.