## Laneco, Inc. v. Stop & Go of Easton, Inc.

*Alfred S. Pierce*, for plaintiff.
*Henry S. Perkin*, for defendant.

WILLIAMS, *P.J.*, October 30, 1981—This is a quiet title action in which judgment was entered for plaintiff on April 15, 1981, following a non-jury trial held before Williams, Jr., P.J. on January 22, 1981. Pursuant to Pa. R.C.P. 1067 and 1038(d), defendant filed exceptions to the court's adjudication. These exceptions are now before the court en banc for disposition.

At issue is whether the Statute of Frauds bars enforcement of a partially executed lease amendment against plaintiff or whether there is sufficient part performance of the amendment to except it from the statute. Defendant-lessee raised two additional issues in its exceptions. We will not address these issues since they were previously decided by the trial court and disposed of to our satisfaction.

The facts of this case are largely undisputed and are as follows: plaintiff is the successor in title to a shopping-center property previously owned by Food Fair Stores, Inc. While Food Fair Stores, Inc. was the owner, a portion of the premises was leased to Stop & Go of Easton, Inc., defendant, for a ten-year period terminating in March, 1978, and additional options. This lease was recorded. Immediately upon taking possession of the premises in 1968, defendant built a fast food restaurant on the lot. In 1976, a lease amendment was negotiated between Food Fair Stores, Inc. and defendant. This amendment was signed by defendant and forwarded to Food Fair, but a copy signed by Food Fair was never received by defendant. About the same time, Charles Calabrese, an Arthur Treacher's franchisee and the assignee of defendant, took possession of defendant's premises. In 1979, Food Fair became involved in bankruptcy proceedings and at a trustee's sale in November, 1979, plaintiff obtained its title to the premises. Defendant and its assigns remained in possession of the premises beyond March, 1978, and in June, 1980, plaintiff brought the present action to compel defendant to recognize that its rights under the lease agreement had terminated.

Defendant claims that it still has rights to the premises under the lease amendment, by which it exercised an option to renew the lease for five years beyond 1978. Plaintiff argues that enforcement of

the lease amendment is barred by the Statute of Frauds which requires that all leases exceeding a term of three years shall be in writing and signed by the parties making the lease. 33 P.S. 1. Defendant contends that the doctrine of part performance applies to this case and removes the lease amendment from the Statute of Frauds. The trial court found insufficient evidence to establish the amendment and entered judgment for plaintiff.

We start with an examination of the terms of the lease amendment. The amendment contemplated, inter alia, a renewal option under which the principal term of the lease could be extended three consecutive times for five-year periods; a clause recognizing that the lessee was exercising its first renewal option; a monthly rental increase from $333 to $400; an additional assessment for taxes and maintenance; and an approval of the assignment of the lease to Calabrese, an Arthur Treacher's franchisee operating through ABE Fast Foods, Inc.

The Statute of Frauds prevents the enforcement of an oral lease for a term in excess of three years "unless it appears that continuous and exclusive possession was taken under the contract and improvements were made by the [lessee] not readily to be compensated in money, or other equitable considerations make it impossible to do justice save by specific performance." Briggs v. Sackett, 275 Pa. Superior Ct. 13, 418 A. 2d 586, 588 (1980); Klingensmith v. Klingensmith, 375 Pa. 178, 100 A. 2d 76 (1953). This is the doctrine of part performance. With respect to the first element of continuous and exclusive possession, there is no dispute that Calabrese, defendant's assignee, and his companies had possession of the premises from 1976 until their bankruptcy in 1979. What is important, however, is whether Calabrese took possession pursuant to the

oral lease amendment. In order for possession to demonstrate part performance, the possession must be taken under the contract sought to be enforced: Brotman v. Brotman, 353 Pa. 570, 46 A. 2d 175 (1946); See, Wright v. Nulton, 219 Pa. 253, 68 A. 707 (1908). Stated another way, the acts of part performance which will remove an agreement from the Statute of Frauds must be referable solely to the contract relied upon: Winslow v. Baltimore & O.R. Co., 188 U.S. 646, 23 S.Ct. 443, 47 L.Ed. 635 (1902).

In this case, both the original lease and the lease amendment had an assignment clause. Thus, it seems that Calabrese's possession could refer to either the original lease or the lease amendment. The evidence shows, however, that Calabrese took possession of the premises pursuant to the assignment clause in the lease amendment. The assignment clause in the original lease merely provided that assignments could be made with the approval of the lessor. The only evidence before us that the lessor consented to an assignment is the lease amendment itself, which specifically approves the assignment to Calabrese's corporations. Thus, the necessary approval for the assignment was merged into the lease amendment and became a term of that amendment. We conclude, therefore, that Calabrese took possession in 1976 pursuant to and in reliance on the lease amendment.

The second element necessary to establish part performance is the making of improvements. The Supreme Court of this Commonwealth has held that "where there is a taking of possession as a result of a parole agreement, and substantial improvements made upon the premises by the lessee, equitable considerations require that the leasehold interest created by parole be enforced." Ridley Park Shopping Center, v. Sunray Drug Co., 407 Pa. 230,

180 A. 2d 1 (1962). While Calabrese was in possession of the premises, he redid the roof of the restaurant to conform to the Arthur Treacher's format. He also made permanent improvements to the building in the nature of interior modifications to the walls, siding and fixtures. These modifications still exist today. Under the rule set out in Ridley Park Shopping Center, we find it appropriate to enforce the lease amendment in the case now before us.

Even beyond the fact of possession and improvements, there are additional facts in this case which give us more reason to enforce the lease amendment against plaintiff. In the Briggs case, the Pennsylvania Superior Court held that possession and improvements or other equitable considerations may remove an oral contract from the Statute of Frauds: 418 A. 2d at 589. One relevant equitable consideration is the amount of time which has passed prior to plaintiff's challenge to defendant's possession: Briggs v. Sackett, supra; Rarry v. Shimek, 360 Pa. 315, 62 A. 2d 46 (1948).

Defendant's assignee took possession in 1976, operated the premises and paid the increased rent until October of 1979. Food Fair never voiced any objection to the assignee's possession. A few months prior to October of 1979, Food Fair, without explanation, stopped negotiating rent checks. Thus defendant's assignee was in quiet possession of the premises for approximately three years before plaintiff acquired the property and challenged that possession. There is no evidence of any explanation for such a delay in objecting to the tenancy, which continued long after the expiration date of the original lease. Consequently, we find that plaintiff's predecessor permitted defendant and its assignee to "assume exclusive possession [of the premises] and expend a large sum of money in effecting perma-

nent improvements on the land from the plaintiff" for more than three years: 407 Pa. 230; 180 A. 2d 1 (1962). Under similar circumstances, the Pennsylvania Supreme Court held in Ridley Park Shopping Center that it would be inequitable to allow plaintiff to assert the Statute of Frauds. Similarly, we hold that it would be inequitable to allow plaintiff to assert the Statute of Frauds under the circumstances of this case.

An additional undisputed fact which supports our decision to enforce the 1976 lease amendment is the rental payments made by defendant since 1976. Prior to the lease amendment, the monthly rental for the premises was $333. The lease amendment contemplated an increase in monthly rental to $400 plus certain adjustments for maintenance and taxes. The testimony at trial showed that defendant paid the increased rent from 1976 until October of 1979 to Food Fair Stores, Inc. and then from November of 1979 to Food Fair's successor, Laneco, Inc. The testimony also showed that Laneco never negotiated the $400 checks it received from defendants, and that a few months prior to October, 1979, Food Fair stopped negotiating the rental checks it received from defendants. The fact remains, however, that defendant paid and the lessor accepted the increased rent for more than a year beyond the termination date of the original lease. While payment of the purchase money, or in this case rent money, alone is not sufficient to remove an oral contract from the Statute of Frauds, Hill v. Myers, 43 Pa. 172 (1862), it is one factor to be considered. In this case, the payment of the increased rent was induced by the lease amendment, which provided for the increased rent and provided that the term of the lease would be extended beyond 1978. These payments are referable solely to the contract de-

fendant seeks to have enforced. We consider the payments as additional evidence that the lease amendment was sufficiently partly performed so as to justify enforcement of the lease amendment against plaintiff.

In conclusion, we hold that under the facts in this case, the lease amendment, although technically within the purview of the Statute of Frauds, is removed from the statute by the doctrine of part performance. We therefore find that the lease amendment is enforceable under its terms and conditions.

Our holding differs from that of the trial judge, who concluded that "the part-performance of the alleged lease amendment agreement makes the tenancy presently one at will." The trial court based its legal conclusion on the case of Blumer v. Dorfman, 447 Pa. 131, 289 A. 2d 463 (1972). We disagree with this conclusion. The basis of the doctrine of part performance is that it would be a fraud upon, in this case, defendant if plaintiff were permitted to escape performance of his part of the oral agreement after he has permitted defendant to perform in reliance upon the agreement: Winslow v. Baltimore & O.R. Co., supra. Thus, once the doctrine of part performance is established, the oral agreement is enforceable under its terms and conditions. In Blumer, part performance was not established. Consequently, the case fell within the Statute of Frauds provision in 68 P.S. 250.202, which reduced the agreement to a tenancy at will. The trial court's reliance on the Blumer case was misplaced.

Finally, we note that a court en banc has the authority to overturn a finding of an individual judge where the court disagrees with the legal conclusions which the individual judge drew from the facts: Com. v. Ware, 438 Pa. 517, 265 A. 2d 790 (1970).

## ORDER

And now, October 30, 1981, after hearing oral arguments by both parties, and upon consideration of the law as applied to the facts of this case, the trial court's order dated April 15, 1981, is hereby reversed, and judgment is entered for defendant and against plaintiff. It is further ordered that the lease agreement between the parties dated September 15, 1967, and the 1976 lease amendment be enforced by their terms.